# CHARLESTON.

### Gas Co. *v.* Elder.

Submitted June 18, 1903—Decided December 5, 1903.

<table>
<tr><td>54</td><td>335</td></tr>
<tr><td>59</td><td>98</td></tr>
<tr><td>d 60</td><td>82</td></tr>
<tr><td>54</td><td>335</td></tr>
<tr><td>d65</td><td>511</td></tr>
</table>

1. Contract—*Sale—Title.*

   Though in a contract for the sale of land a privision for payment on a day be made of the essence of the contract, yet if the vendor is not then able to pass good title, equity will relieve against a failure to pay on the day, and enforce performance at the instance of the vendee. (p. 339).

2. Contract—*Title—Sale.*

   Where a contract for the sale of land makes payment on a day of the essence of the contract, but also requires the vendor to make a deed simultaneously with payment, the covenant for payment and that to make a deed are mutual and dependent, and if the vendor do not make, or offer to make, a deed on the day, equity will disregard the failure to pay on the day, and enforce the contract at the instance of the vendee. (p. 341).

3. Contract—*Title—Sale.*

   Though a contract for sale of land make payment on a day of its essence, yet the vendor may waive compliance with it, or after failure to pay on the day continued recognition by him of the contract as still binding is a waiver of strict compliance. (p. 342).

Appeal from Circuit Court, Marshall County.

Bill by the Wheeling Creek Gas, Coal & Coke Company against Thomas B. Elder and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

Meighen & Oldham, for appellant.

Riley & Ritz, for appellees.

Brannon, Judge:

The Wheeling Creek Gas, Coal and Coke Company brought suit in the circuit court of Marshall county against Thomas B. Elder, the bill in which states that Elder agreed with H. C. Staggers to sell to Staggers the coal in two tracts of land by two written agreements. These agreements contained this language: "This agreement witnesseth, that T. B. Elder and Rosana, his wife, parties of the first part, hereby agree to sell and convey to H. C. Staggers, party of the second part, his heirs and assigns, all the coal of the Pittsburg or river vein, in and under that certain tract of land * * * for which the party of the second part, heirs or assigns shall pay six dollars, per acre, for each and every acre, as follows: One third when deed is signed, sealed and delivered, the remainder in two equal annual installments thereafter, with interest at 5 per cent, on deferred payments. Second party reserves the right to pay the whole amount when deed is delivered.

"A general warranty deed, clear of all encumberances, to be made to the said party of the second part, his heirs and assigns, when the first payment is made, (party of the first part to furnish complete abstract of title), and others are secured by deed of trust on the said property hereby sold.

"It is expressly understood and agreed that if the first payment aforesaid is not made on the 30th day of November, A. D., 1899, or as soon thereafter as the title shall be examined and accepted by the party of the second part, or his heirs or assigns, this agreement shall be considered as rescinded, and neither party shall be bound thereby. Witness my hand and seal this 17th day of August, A. D., 1899. T. B. Elder, (Seal)."

The bill states that Staggers, by writing, 24 October 1899, assigned his right under said contract to D. H. and S. H. Pearsall.

The bill states that at the time of the assignment by Staggers to the Pearsalls of said contracts, the Pearsalls had been commissioned by certain named persons to purchase a coal field, and such assignments were taken for the benefit of themselves and associates; that said Pearsalls and those associates on 7th November met and ratified such assignments, and organized themselves into a company or association by the name of The Wheeling Creek Gas, Coal and Coke Company, agreeing to become incorporated under that name, and in the meantime to act under the name with relation to such coal purchase; that Samuel H. Pearsall was at such meeting elected president and Daniel H. Pearsall treasurer; that said company was incorporated under the laws of West Virginia, 21st December, 1900; and that on 25th April, 1901, the Pearsalls assigned to the corporation said agreements. The bill states that on 22 November, 1899, the Pearsalls signified in writing to Elder that the association by said corporate name had become owners of said agreement with Staggers, and agreed to perform his covenants and take and pay for the coal according to the agreement with Staggers, and the treasurer of said association did pay Elder twenty dollars as part of the purchase money under the sale; and that Elder in writing did accept notice of the ownership of said company under said agreement and did agree to the substitution of the association acting under the name of The Wheeling Creek Gas, Coal and Coke Company in place of Staggers in said agreements; and thus Elders contracted and agreed with said company, and accepted from it twenty dollars under said contracts for the sale of the coal.

The written notice of acceptance is signed by D. H. Pearsall as treasurer of said association, and its acceptance is made "subject to examination and approval of the titles, with complete abstracts of title." The bill further states that a number of tracts of coal land had been purchased by said association, among them the Elder tracts, and that Elder and the association agreed that Elder would join with other parties who had sold coal lands in the block purchased for the association and employ an attorney to make abstracts of their titles and prepare deeds, and that the certificate of such attorney would be acceptable to the association, and title would be taken upon his certificate and would be paid for as soon as he should prepare proper papers; and that under this

agreement Elder forthwith employed Meighen & Oldham as attorneys to prepare abstracts and deeds, and that it was understood and agreed between Elder and the association that no more of the purchase money should be due or payable by the terms of said contracts until such abstracts of title should be completed and the titles approved by said attorney, and that in the meantime said contract should remain in full force; and that Elder gave his title papers to said attorneys, and they undertook to make the abstracts, and were from time to time assisted therein by Elder; that the contracts made with the attorneys was that they should complete abstracts for all the lands in said block, and as soon as completed said company was to settle for the same, paying one-third of the purchase money down as per the contract. The bill further states that said attorneys found that the title of Elder was not good and marketable, as the title to eighty-seven acres of it was held by a deed to Elder so defectively executed that the title was bad, and that at Elder's instance the attorneys wrote a new deed and had it executed by the proper persons, and thus perfected Elder's title; and that said attorneys so certified to the association, and it at once undertook to pay Elder for the coal and get his deed. The bill also states that until late in the autumn of 1900 Elder made no objection to complying with his contract as soon as he could perfect his title, never denying his liability to do so, or alleging any default or cause for rescinding on the part of the association; but that late in that autumn he conceived that he could sell the coal for a greater price, and fraudulently refused to meet the representatives of said association, and that the attorneys prepared a deed to be executed by Elder, dated 24th October, 1900, to the Pearsalls and other parties who were members of said association. Elder refused to execute it, and it was returned to Pearsall with the declaration that Elder had no contract with him and his associates. The bill then says that the association at once urged Elder to make the deed and receive the purchase money, and in December, 1900, Pearsall and Patton tendered him the money and requested him to execute the deed, and he refusing, they deposited $700.00 in bank on the 7th day of December, 1900, and notified Elder that he could get it by calling on B. F. Meighen for a check payable to Elder and left in Meighen's hands to be delivered upon delivery of the deed. The bill avers the continued readiness of the

plaintiff to perform the contract, and brings said purchase money into court. Upon demurrer to the bill, the court dismissed it, and the Gas Company appeals.

In a brief it is claimed that if the agreements are to be regarded as options, they are of no force, because the acceptance of them was subject to examination and approval of title, with complete abstract, whereas, acceptance of an option must be unconditional. *Weaver* v. *Burr,* 31 W. Va. 736; *Watson* v. *Coast,* 35 *Id.* 463. But the condition in the acceptance was nothing more than the condition contained in the option, if an option, and surely an acceptance may insert a condition consistent with the option itself. If this condition had been left out of the acceptance, the condition would have been spoken by the option. The acceptance only repeated unnecessarily what the option contained. But I regard the papers, not as options, but as actual sale, and the presence of a subsequent condition of defeasance does not make them options or any the less contracts of sale. *Monongah* v. *Fleming,* 42 W. Va. 538. Viewed as such no acceptance was necessary. True, as the papers say that Elder "agrees to sell' and make no binding obligations on either party till payment, we might regard them as options. But that is immaterial; for if options, acceptance made them ordinary contracts governed by their terms. *Watson* v. *Coast,* 35 W. Va. 463. The papers provide that deed shall be made at payment—both at same moment. So payment was not the act of acceptance.

Treating the papers as such contracts the defense says that failure to make the first payment on the day fixed caused the contracts to end, worked their rescission, because time is made by them the essence of the contract. The general rule is that time of payment is not of the essence of the contract, as the purchase money is a simple debt, and interest is compensation for delay of payment. *Ballard* v. *Ballard,* 25 W. Va. 470. But the parties may lawfully make it so, and that such is the intent in this case is manifest from the papers. But the contracts demand good title and impose upon Elder duty to exhibit abstract of good title and delivery of deeds simultaneously with the first payment, and gives Staggers the right to examine title in the very forfeiting clause. The words requiring payment on a given day alone do make time the essence; but do the provision that Elder is to show abstracts of title, make a deed and allow time for examintion

of title modify this? Staggers is required to pay on a day; but on that same day, at the time of payment, Elder must show abstract of title and have a deed in his hand. These are dependent cóvenants. Staggers was bound to offer payment; but Elder was bound to do the things required of him, and Staggers was not bound to deliver the money until Elder was ready to do those things resting on him. *Watson* v. *Coast,* 35 W. Va. 463; *Barrett* v. *McAllister,* 33 *Id.* 738. Which had to perform, or offer to perform his duty first, Elder or Staggers? Must Staggers seek Elder and offer to pay, and demand title abstract and deed? Or must Elder seek Staggers and offer abstract and deed and ask payment? Here we cannot say that the duty is first on either; we cannot draw so nice a distinction, when duty rests on both. Waterm., Specif. Perform. section 444. The general rule is that a vendor must have and show good title, and these contracts require Elder to show title and make a deed at the time of first payment. As the contract required him to have in his hand these papers, we may fairly say that it was his duty to tender them. He did not do this, and we can as fairly ascribe fault in him in this, as in Staggers—perhaps more so. And by the contracts, if Staggers had offered payment, had declared readiness on the day, Staggers was to have time to examine title.

Was payment a condition precedent, so that without it no right in equity to the land vested in Staggers by the contracts, or did the contracts vest an estate subject to be defeated by non-compliance with the subsequent condition of payment? "When a contract depends on a condition precedent; or in other words, where the intention of the parties is that no right shall vest until certain prescribed acts are done or omitted, or unless certain prescribed acts are done or ommitted before a specified time, then equity will not relieve against a breach of such precedent condition, for no court has power to make a new contract for the parties which shall confer rights where no rights originally existed. But if a contract contains a condition subsequent, or, in other words, if the intention of the parties is that the rights under the agreement shall vest at once upon its conclusion—subject to be defeated or ended upon the non-performance of the provision which constitute the subsequent condition—or its non-performance at or before a specified day—then equity, by virtue of its jurisdiction over penalties and forfeitures, has power to relieve

the defaulting party from the loss or forfeiture caused by his breach of this subsequent condition. This power of relief would even more certainly exist when the breach was a failure, not to do the thing at all, but merely to do it at or within a specified time. It is, therefore, held, in a great number of cases, that the forfeiture provided for by such a clause as the one described above, on failure of the party to fulfill at the proper time, unless such failure is intentional, or causes an injury to the other party which cannot be compensated, will be disregarded and set aside in equity; and the defaulting party, performing, or being ready and willing to perform, at a subsequent time, will be allowed to enforce the contract notwithstanding delay. In short, the general doctrine is applied in the face of such express provision declaring the contract ended in case of non-fulfillment of its terms at the appointed day, unless the agreement is so worded that a compliance with these terms at the prescribed time is made a condition precedent to the vesting of any rights." "Where the clause provides for a forfeiture upon the non-payment of the purchase price at the time stipulated, and is therefore, intended to secure punctuality in payment, it has been regarded as almost a matter of course for equity to disregard it, and permit a subsequent payment, since interest is treated as a sufficient compensation for delay. But even here the delay must not be willful, nor the delay unreasonable." Pomeroy, Specif. Perform. sections 379, 380; Waterman, Specif. Perform. section 437.

I hold that this provision for a payment is not a condition precedent, but subsequent, and that an estate vested subject to be defeated, under circumstances, by non-payment. Under these principles equity has power to disregard this forfeiture. Especially under the circumstances of this case as stated in the bill, which circumstances are that Elder did not furnish abstract of title, or a deed, or offer to do so, and his title, at the date fixed for payment was bad to a material part of the land. "If the defendant's delay or default has caused the plaintiff's failure to perform in time, he cannot object to such failure as a defense, however plain and explicit may be the provision of the contract requiring punctuality. A vendor who cannot make a clear title in time cannot set up the purchaser's default in prompt payment of price." Pomeroy, Specif. Perform. section 381. "But if a party, who insists upon exact time, has himself been the cause of delay, .

a court will notwithstanding decree specific performance. The vendor is not entitled to forfeit the contract as against the vendee when he is himself in no condition to perform, even though by the terms of a contract he has right to declare it forfeited, and retain what has been paid, if the vendee makes the default." Waterman, Specif. Perform. section 436. Suppose Staggers had gone with his money to pay Elder on the day, he would have found title defective, and equity will not require him to do a useless thing, and forfeit his right. "A tender of performance need not be made when it would be wholly nugatory, as where the vendor is unable to carry out the contract by reason of liens." Waterman, Specif. Perform. section 446.

There is another reason for equity to relieve against the letter of the contract. According to the bill Elder, after the day for payment, joined with others who had sold coal in employing lawyers to investigate title, and dispensed with payment until abstract should be made, and agreed that the contracts remain in force. "Though time have been expressly made of the essence of the contract, yet the benefit of such an agreemnt may be waived, either at law or in equity." 2 Lomax Dig. 72. "Specific performance may be decreed in favor of a party who has failed to perform his part of the agreement, if he can show acquiescence in the delay by the other party, or acceptance of a substitute for literal performance." Waterman, Specific. Perform. section 478. "A party may waive a condtion, or treat the contract after default as continuing in force, in which case he cannot insist on a forfeiture." Waterman, Specif. Perform. sections 449, 480.

It is said that waiving strict compliance, yet the eleven months between the day of payment and day of tender is too great a delay. The answer is that the chosen attorneys of Elder were in the work of examining titles to various tracts, Elder's among them, and he agreed to await their report. It may be that it was a long time to examine title; but the bill represents that Elder aided in the work, employed the attorneys, and did not insist on haste, but consented to such delay, recognizing right to complete the sale when report on title should come.

It is objected that the Gas Company has no right to sue on these contracts because there was no contract by Elder with it, and because the corporation was not in being at its date. By the contracts Staggers acquired an estate. He assigned to Pear-

salls, and they purchased in trust for the contemplated corporation, or its component organizers. Pearsalls by deed conveyed their estate under the contracts to the corporation. Now, it does seem that the right is vested in the corporation, if these facts are true. The bill charges that Elder recognized the coming corporation as owner of the contracts. The Pearsalls held as trustees for it, and they executed the trust by their accepted deed. Whatever rights were under the contracts they came to it. We held in *Bank* v. *Lumber Company*, 32 W. Va. 357, that a deed made and delivered in escrow for a corporation not yet incorporated, named as grantee, and delivered to it when incorporated was valid. Here the estate was held by individuals as trustees and passed to the corporation when it came into being. It is not necessary to say that Elder treated with the corporation, as he contracted with a natural person an estate which finally went to the corporation, and this makes a privity between it and Elder. "As a corporation may, in most states, ratify or adopt a contract made in its behalf by promoters before incorporation, and thus become liable thereon, it may thus also acquire the right to enforce the same. By such ratification or adoption it makes such contract its own, and may sue thereon in its name. When a contract by the promoters of a corporation with the owner of land, under which the latter agrees to sell the land to the corporation when organized, is adopted by the corporation, it may sue for specific performance." 1 Cook on Corp. section 102. We are not in a court of law, but in equity, which looks at substance, and will not allow a lawful contract to be worthless on purely technical ground. The corporation accepted the deed from Pearsalls.

It seem to be that Staggers, the Pearsalls and their associates should be made parties. This was not assigned as ground of demurrer. It may be thought that this is ground of sustaining the decree of dismissal; but I do not think so, as the court should have required them to be made parties under section 58, chapter 125 Code.

Our conclusion is to reverse the decree, overrule the demurrer to the second amended bill, direct the plaintiff to amend by making the persons indicated parties, and remand the cause with direction that a rule be given the defendants to answer, and for further proceedings.                              *Reversed.*