303 S.E.2d 702

**LEE ENTERPRISES, INC., etc.**

v.

**TWENTIETH CENTURY–FOX FILM CORP., etc.**

**No. 15705.**

Supreme Court of Appeals of West Virginia.

May 25, 1983.

Steptoe & Johnson, Robert M. Steptoe, Jr., and Steven F. Brines, Clarksburg, for appellant.

Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Milton L. Herndon, Huntington, and W. Nicholas Reynolds, Ashland, Ky., for appellee.

MILLER, Justice:

This is an appeal by Twentieth Century-Fox Film Corporation, d/b/a Twentieth Century-Fox Television (hereinafter Fox), from a summary judgment entered against it and in favor of Lee Enterprises, Incorporated, d/b/a WSAZ–TV (hereinafter

WSAZ). At issue is a written contract involving the license for telecasting the M*A*S*H television series. The particular conflict is whether the contract contained an ambiguity as to the term of the agreement.[1]

The relevant contract provisions, as found in the rider, addressed by the parties are:

"1. Fox hereby confirms and Licensee [WSAZ] hereby acknowledges that the herein licensed half-hour television series entitled 'M*A*S*H' is currently being telecast in Licensee's exclusive territory over the C.B.S. Television Network, and Licensee agrees that they may not commence telecasting the above series until after the completion of all telecasts of the said series in Licensee's exclusive territory. Fox agrees to notify Licensee as soon as possible in writing the date of availability in Licensee's exclusive territory which shall be no later than September 1, 1979, but no sooner than the completion of all Network runs.

"2. In addition to the one-hundred-and-nineteen (119) half-hour episodes (Seasons One thru Five) herein licensed of the above television series, Licensee shall purchase all additional episodes produced by Fox from the date hereof.

\* \* \* \* \* \*

"7. (a) If the number of half-hour programs produced total one-hundred-and-nineteen (119), the term of this license shall be for a period of four (4) years; and

"(b) If the number of half-hour programs produced total one-hundred-and-nineteen (119), or over, but not to exceed a total of one-hundred-and-sixty-eight (168) episodes produced, then the term of license shall be for a period of no more than seven (7) years."

Also involved is the following provision of paragraph 14 of the printed form: "This Agreement shall be construed under the laws of the State of California."

Fox seizes upon this language of paragraph 14 and proceeds to offer California cases regarding the admissibility of extrinsic evidence to explain the terms of a written contract. It contends that the trial court ignored the California law. We decline to settle this issue since it appears that the circuit court held that the contract was not ambiguous. We believe it is sufficient to hold that on the record before the circuit court, it was not possible to conclude that the contract was unambiguous and that WSAZ was entitled to a seven-year term.

The contract was signed in January, 1977, and under its provisions WSAZ would not receive telecasts of M*A*S*H until the C.B.S. Television Network had completed its telecasts. The number of telecasts initially licensed was 119 with a term of the license being set at four years. In paragraph 3 of the printed contract, the term of the contract is further modified by this language:

"If prior to the expiration of the term of this license a Picture has been telecast the maximum number of runs permitted hereunder, all of Licensee's rights thereto shall be deemed to be forthwith terminated. If Licensee completes all telecasts of all the Pictures prior to the expiration of the term of this license, Licensee's rights to telecast such Pictures shall be deemed terminated as of the date of the last telecast and the then remaining unpaid license fees shall forthwith become due and payable. Failure to complete the maximum runs during the term shall not operate to extend the term."

Fox filed the affidavit of Stanley DeCovnick in opposition to WSAZ's summary judgment motion which stated that at the time the agreement was executed in January, 1977, there were 119 episodes of M*A*S*H actually produced. This affidavit also indicates that under Fox's contract with C.B.S., there was some contemplation that additional programs could be produced for two additional seasons which would extend the number of telecasts to 168. It is

---

1. The contract consisted of a twenty-paragraph printed form with a typewritten four-page rider. The court below and the parties have treated it as a unified document, as do we.

for this reason that paragraph 7(b) was set into the agreement.

Fox contends that the maximum number of telecasts available to WSAZ was 168 episodes. It claims that paragraph 2 giving WSAZ the right to purchase all additional episodes produced by Fox from the date thereof must be limited by the language in paragraph 7(b), because when the contract was signed no one knew how many episodes beyond 168 would be produced.

The circuit court did not discuss whether the contract was ambiguous. It concluded in its memorandum order and opinion that paragraph 2 gave WSAZ the right to purchase all episodes beyond 119 during the life of the contract. In looking at paragraph 7, it found the life of the contract to be seven years since more than 119 episodes had been produced. Consequently, the court found that WSAZ was entitled to have all telecasts of M*A*S*H produced during the seven-year term purchased under the original agreement.

■ We believe the circuit court erred in granting summary judgment because the contract was ambiguous. There was a conflict between paragraphs 2 and 7. The former permitted the purchase of all episodes produced while the latter provided a limit of 168 episodes. Furthermore, the word "term" in the agreement is not used in an absolute time sense but is tied to a specific number of episodes, i.e. 119 episodes for a term of four years, not to exceed 168 episodes for a term of no more than seven years. The printed contract language in paragraph 3, as previously quoted, demonstrates that the term of the agreement is mutable. It represents only the period of time during which the station has to play the specified episodes. If the telecasts are completed prior to the end of the term, then it automatically terminates.

We believe the circuit court's finding of a finite term was error, and the proper inquiry is the number of episodes the parties contracted for under the agreement.

■ While Fox argues that the circuit court ignored the provisions of paragraph 14, which required the contract to be construed according to California law, we do not believe this is the determinative issue. From a conflict of law standpoint, we have recognized that parties may stipulate in a contract that it should be construed according to the law of a given jurisdiction. This rule carries two qualifications: (1) the designated jurisdiction must have some reasonable relationship to the contract; and, (2) the public policy of this State must not be offended. *General Electric Company v. Keyser,* 166 W.Va. 456, 275 S.E.2d 289 (1981). Neither party in this case has raised an issue under this rule.

■ The position of WSAZ is that the parol evidence rule as applied in California is essentially the same as our application of the rule, but that there was no ambiguity in the contract.[2] We need not address the scope of California law in regard to the parol evidence rule. We believe both parties concede that if the contract is ambiguous, parol evidence can be utilized and in this respect California law comports with our general law contained in Syllabus Point 4 of *Watson v. Buckhannon River Coal Co.,* 95 W.Va. 164, 120 S.E. 390 (1923):

"While the general rule is that the construction of a writing is for the court; yet where the meaning is uncertain and ambiguous, parol evidence is admissible to show the situation of the parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently. If the parol evidence be not in conflict, the court must

---

**2.** The question of whether the parol evidence rule is a rule of substantive law and, thus, governed by the law where the contract is made, as distinguished from a rule of evidence controlled by the forum where the suit is brought, is not addressed by the parties. Consequently, and in view of the posture of this case, we decline to discuss the issue. *See Kanawha*

*Banking & Trust Company v. Gilbert,* 131 W.Va. 88, 46 S.E.2d 225 (1948); *Lee v. Joseph E. Seagram & Sons, Inc.,* 552 F.2d 447 (2nd Cir.1977); *Rock-Ola Manufacturing Corporation v. Wertz,* 282 F.2d 208 (4th Cir.1960); *Colozzi v. Bevko,* 17 N.J. 194, 110 A.2d 545 (1955); Leflar, *American Conflicts of Law* § 125 (3rd ed. 1977); 16 Am. Jur.2d *Conflict of Laws* § 132 (1979).

construe the writing; but, if it be conflicting on a material point necessary to interpretation of the writing, then the question of its meaning should be left to the jury under proper hypothetical instructions."

*See also* Syllabus Point 1, *Leasetronics v. Charleston Area Medical Center*, 165 W.Va. 773, 271 S.E.2d 608 (1980); Syllabus Point 1, *McShane v. Imperial Towers, Inc.*, 165 W.Va. 94, 267 S.E.2d 196 (1980); *Berkeley County Public Service District v. Vitro Corporation of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968).

 Having found the contract to be ambiguous, the only remaining question is whether a summary judgment was appropriate. Most courts hold that where a contract is ambiguous then issues of fact arise and a summary judgment is ordinarily not proper. *Brooks v. Renner and Company*, 243 Ark. 226, 419 S.W.2d 305 (1967); *Travelers Indemnity Co. v. McIntosh*, 112 Cal. App.2d 177, 245 P.2d 1065 (1952); *Griffin Builders Supply, Inc. v. Jones*, 384 So.2d 265 (Fla.App.1980); *Bishop Cafeteria Company of Omaha v. Ford*, 177 Neb. 600, 129 N.W.2d 581 (1964); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517 (1980); *Meuse-Rhine-Ijssel Cattle Breeders of Canada Ltd. v. Y-Tex Corporation*, 590 P.2d 1306 (Wyo.1979).[3]

We further believe that *Watson v. Buckhannon River Coal Co., supra*, requires a further proviso that if the parol evidence is not in dispute, then a summary judgment may be appropriate since the construction is one for the court to determine.

Here, the trial court erred in assuming that the contract was unambiguous. For the foregoing reasons, the judgment is reversed and the case is remanded.

Reversed and Remanded.

---

**3.** We have not had occasion to decide this precise point in the past but it bears some analogy to our rule on motions to dismiss under Rule 12(b)(6) of our Rules of Civil Procedure. In situations where contract provisions are ambiguous, we have held it is improper to grant a motion to dismiss. *E.g., Leasetronics v. Charleston Area Medical Center, supra; John W. Lodge Distributing Company, Inc. v. Texaco, Inc.*, 161 W.Va. 603, 245 S.E.2d 157 (1978).