338 S.E.2d 222

**BUCKHANNON SALES CO., INC.**

v.

**APPALANTIC CORPORATION, et al.**

No. 16596.

Supreme Court of Appeals of West Virginia.

Dec. 17, 1985.

---

Charles G. Johnson, Johnson & Johnson, Clarksburg, for appellant.

James N. Riley and Roger J. Morgan, Young, Morgan, Cann & Romano, Herbert G. Underwood and Gary W. Nickerson, Steptoe & Johnson, Clarksburg, for appellees.

NEELY, Justice.

On 1 January 1979 Buckhannon Sales Company, Appalantic Corporation and Monongahela Power Company entered into a contract in which Monongahela Power Company agreed to purchase coal from Appalantic with Buckhannon acting as sales agent. By agreement dated 28 August 1980, Appalantic, now under new owners, and Buckhannon established a commission scheme under which Buckhannon would recieve compensation for its efforts as sales agent. Buckhannon was to calculate a six percent sales commission from the net sale price of the coal reduced by both the cost of trucking the coal "from the tipple to Harrison Station ..." and the cost of cleaning that coal.[1] In a 24 September 1980

---

1. The relevant language from the 28 August 1980 Modification Agreement reads as follows:

    3. As compensation for procurement of said Contract and for continued servicing under said Contract, Appalantic has agreed and does hereby agree to pay Buckhannon for such services a fee equal to Six Percent (6%) of the net sales price of any coal delivered to Monongahela Power Company from Appalantic, less the cost of trucking *said coal* from *the*

"Letter of Instruction" Appalantic recapitulated the method of computation Buckhannon was to use for its commission from the sale of coal to the Monongahela Power Company.[2] At the time of that letter, Appalantic had mines located only on "R.N. White leasehold," and the coal those mines produced was washed exclusively at the "Mikela" washing plant. However, under the agreements, Appalantic had the first right to furnish coal under the Monongahela agreement whether that coal came from Appalantic's mines or whether Appalantic acquired the coal from a third party.

Between August 1980 and November 1982 Buckhannon received the proceeds from the sale of coal to Monongahela Power Company and made distribution of those proceeds. All the coal shipments from the Appalantic mine on the "R.N. White leasehold" were washed at the "Mikela" plant and then trucked to Harrison Station. On these shipments, Buckhannon deducted trucking and washing costs before taking commission. On all other coal sold under the Monongahela Power Company contract, and provided by Appalantic, Buckhannon deducted its commission from the gross sales price with no allowance made for trucking or washing. In October, 1982 Buckhannon received a letter from Appalantic disputing Buckhannon's method of calculating and claiming that Buckhannon should make its deductions for trucking and washing from the gross sales price before computing its commission on all coal delivered to Monongahela Power Company and provided by Appalantic.

On 9 January 1984, Buckhannon sued Appalantic and Lang Brothers, Inc.,[3] under the Uniform Declaratory Judgement Act, *W. Va. Code* 55–13–1 to 55–13–16 [1941], seeking interpretations of the various agreements between Buckhannon and Appalantic. Before any hearings on the matter, Lang filed a motion in limine to prevent the introduction of parol testimony concerning the various documents, contending that the court should not admit parol evidence and that the terms of the various contracts were unambiguous.

On 24 August, 1984, on the basis of several memoranda and hearings the court sustained Lang's motion. On 24 August 1984, Buckhannon moved that it be permitted to vouch the record with the testimony which it would have adduced. The court permitted the record to be vouched accordingly and Buckhannon presented Carl J. Martin, its president, who testified regarding various documents filed with the complaint and the construction given to the contract by the parties. At the conclusion of that hearing, the court requested and parties supplied proposed findings of fact and conclusions of law. On 5 October 1984, on the basis of the pleadings and record the court adopted the findings of fact and conclusions of law submitted by Lang, decided that the contracts were not ambiguous, and held that Buckhannon must deduct $4.00 per ton for trucking and $4.40 per ton for cleaning regardless of whether the coal came from Appalantic's mine on the "R.N. White leasehold" or from a different source.

*tipple* to the Harrison Station at Haywood Junction, Harrison County, West Virginia, which costs currently approximates Four Dollars ($4.00) per ton, together with escalations permitted by such Contract, *and less the cost of cleaning such coal at a coal cleaning plant,* which cost currently approximates Four Dollars and forty-four cents ($4.44), together with escalations permitted by the Contract. [Emphasis supplied by the Court].

2.  The 24 September 1980 "Letter of Instruction" states in pertinent part:
    ... Buckhannon shall make disbursement of the proceeds of the sale of such coal in the following manner to the parties and in the amount(s) indicated below.

1.  To the trucking firm(s) hauling the coal from Appalantic's tipple to the Harrison Power Station at Haywood which presently amounts to Four Dollars ($4.00) per net ton, together with such escalations as may be permitted from time to time under the said Coal Sales Agreement.
2.  To Mikela Corporation, a WV Corporation, for washing, processing and loading the coal, the cost of such washing, processing and loading of such coal as fixed by the Coal Sales.

3.  In November, 1982 Appalantic assigned its agreement with Buckhannon to Lang Brothers, Inc.

The question before us is whether the parol evidence rule bars the introduction of testimony concerning the agreements that detail the allocation of costs between Appalantic and Buckhannon. We hold that the motion in limine was erroneously sustained and that the parties should have the opportunity to explain the agreements. Therefore, we reverse the summary judgment.

The underlying issue in this case is whether Buckhannon must make deductions for trucking and washing coal before computing its sales commission on all coal delivered under the Monongahela Power Company agreement, and provided by Appalantic, regardless of the actual shipping and trucking costs. Buckhannon maintains that to interpret and apply the various contracts and memoranda governing these matters, it is necessary to adduce testimony concerning the agreements and the performance under these agreements.

■ Under the parol evidence rule, a written contract is considered "to merge all of the negotiations and representations made prior to execution, and extrinsic evidence is not available to alter or interpret language which is otherwise plain and unambiguous on its face." *Warner v. Haught, Inc.*, 174 W.Va. 722, 329 S.E.2d 88, 94 (1985). However, parol evidence rule will not bar the introduction of testimony when writings are ambiguous. This court crystallized this rule as follows:

> While the general rule is that the construction of a writing is for the court; yet where the meaning is uncertain and ambiguous, parol evidence is admissible to show the situation of the parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently. If the parol evidence be not in conflict, the court must construe the writing; but if it be conflicting on a material point necessary to interpretation of the writing, then the question of its meaning should be left to the jury under proper hypothetical instructions.

Syllabus Point 4, *Watson v. Buckhannon River Coal Co.*, 95 W.Va. 164, 120 S.E. 390 (1923). Furthermore, we have consistently applied this rule to ambiguous contracts. *Lee Enterprises Inc. v. Twentieth Century-Fox Film Corp.*, 172 W.Va. 63, 303 S.E.2d 702 (1983) (conflict between paragraphs of contract demonstrate terms of contract were mutable and therefore contract was ambiguous). *Leasetronics v. Charleston Area Medical Center Inc.*, 165 W.Va. 773, 271 S.E.2d 608 (1980) (agreement was ambiguous as to whether the agreement was a contract for sale or a release). *McShane v. Imperial Towers, Inc.*, 165 W.Va. 94, 267 S.E.2d 196 (1980) (lease provisions regarding landlord's liability to deliver occupancy was sufficiently ambiguous to permit parties to introduce extrinsic evidence to show circumstances surrounding lease).[4] All of these cases deal with situations in which the contract, when viewed without reference to extrinsic evidence, is susceptible to different interpretations.

■ In the present case, Buckhannon seeks to introduce evidence on the hauling and washing arrangements. Buckhannon argues that parol evidence is necessary to show that "the tipple" and "said coal" in Paragraph 3 of the 20 August 1980 Modification Agreement refers only to "Appalantic's tipple" and only to coal produced from Appalantic's mines at the "R.N. White leasehold." We cannot say as a matter of law that the agreements themselves are clear and unambiguous in that they demand that the trucking and washing charges should be deducted from all coal supplied under the Monongahela Power agreement and not only to the coal removed from Appalantic's mines. It is quite possible that Buckhannon's testimony will not vary or contradict the writings, but rather provide completeness to the set of agreements. Accordingly, we must permit Buckhannon to adduce testimony about the agreements.

■ Having found the contracts to be ambiguous, it follows that the trial court's

---

4. *See also* Annot., 40 A.L.R.3d 1384, § 6 (1971).

sustaining of the motion in limine was improper. And because an ambiguous contract raises issues of fact, the trial court's judgment on the pleading was improper. *Lee Enterprises, Inc. v. Twentieth Century-Fox Film Corp.*, 172 W.Va. 63, 303 S.E.2d 702 (1983).

For the foregoing reasons, the judgment of the trial court is reversed and the case remanded for further proceedings consistent with this opinion.

Reversed and remanded.