371 S.E.2d 353

**GLENMARK ASSOCIATES, INC.**

v.

**AMERICARE OF WEST VIRGINIA, INC., a West Virginia Corporation, and Morgantown Health Care Corp., a West Virginia Corporation.**

No. 17555.

Supreme Court of Appeals of
West Virginia.

July 18, 1988.

James A. Russell, Steptoe & Johnson, Clarksburg, for Glenmark Associates.

Clark B. Frame, Morgantown, for Americare of West Virginia, Inc., a West Virginia Corp. and MHCC.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Monongalia County, entered February 23, 1986, which granted summary judgment in favor of the appellees, Americare of West Virginia, Inc. and Morgantown Health Care Corp., in a civil action brought by the appellant, Glenmark Associates, Inc., to enforce an agreement for the sale of stock. The circuit court concluded that the appellant had failed to perform in a timely manner certain conditions precedent to the vesting of its rights under the agreement. We conclude that the court erred in not considering extrinsic evidence as to the time and manner of performance, and we reverse the judgment of the circuit court.

Glenmark Associates, Inc. (hereinafter, "Glenmark") is a health care development and management firm whose principal office is located in Morgantown, Monongalia County. Americare of West Virginia, Inc. (hereinafter, "Americare") owns all of the

issued and outstanding shares of capital stock of Morgantown Health Care Corp., which, in turn, owns a skilled and intermediate care nursing facility in Morgantown. Americare is a wholly-owned subsidiary of Americare Corp., an Ohio corporation.

In the fall of 1984, Americare entered into negotiations to sell its Morgantown Health Care Corp. stock to Glenmark. The principal negotiators in this transaction were Mark Nesselroad, president of Glenmark, and Chester Howard Bradeen, senior vice-president of Americare Corp.

On January 8, 1985, Mr. Bradeen met with Mr. Nesselroad in Morgantown, and the two men executed a stock purchase agreement prepared by David M. Kauffman, corporate counsel and executive vice-president of Americare Corp. Under the terms of the agreement, Glenmark was allowed thirty days in which to consummate the transaction. Paragraph 4(b) of the agreement provided:

> The time period for consummation hereunder may be extended for an additional thirty (30) day period by the Buyer paying to the Seller an additional sum of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00) and providing to Seller a copy of an executed Preliminary Commitment, or other evidence reasonably acceptable to Seller showing the availability of financing subject only to the usual and customary conditions contained in commitments of this type. This sum is to be credited toward the purchase price at closing.

Paragraph 4(c) of the agreement allowed for an additional forty-five day extension of the time upon the payment by Glenmark of an additional $50,000 to an escrow agent.

Mr. Bradeen and Mr. Nesselroad were scheduled to meet with Mr. Kauffman on February 1, 1985 to discuss provisions of the agreement relating to control of the assets of Morgantown Health Care Corp. and bond restrictions. When Mr. Nesselroad was unable to attend due to inclement weather, the meeting was rescheduled for February 11, 1985, several days after the expiration of the initial thirty-day term of the agreement.

On February 8, 1985, Mr. Nesselroad telephoned Mr. Bradeen to discuss obtaining the thirty-day extension provided under Paragraph 4(b) of the agreement. Mr. Nesselroad offered to mail a $5,000 check to Americare that day in satisfaction of the conditions of Paragraph 4(b), but was advised that he could simply bring the check to the meeting scheduled for the following Monday. The parties also discussed allowing Glenmark to provide the evidence of availability of financing contemplated by Paragraph 4(b) at the February 11 meeting.

On February 10, 1985, Mr. Bradeen telephoned Mr. Nesselroad to cancel the meeting scheduled for the following day. At that time, Mr. Nesselroad requested, and Mr. Bradeen agreed to consider providing, a letter of extension stating that Americare would allow Glenmark to satisfy the terms of Paragraph 4(b) at a future meeting to be scheduled by the parties.

Sometime thereafter, Mr. Nesselroad learned that Americare Corp. was being sold to another corporation.[1] On February 12, 1985, Glenmark mailed a $5,000 check to Mr. Bradeen. The following day, Glenmark forwarded to Mr. Bradeen a letter from C. Barton Loar, senior vice-president of the First National Bank of Morgantown, dated February 13, 1985. Mr. Loar's letter stated that the bank had reviewed and was looking favorably upon Glenmark's financing proposal but wished to review the loan application further. Mr. Loar further stated that the bank was "working toward giving you an approval at the earliest possible date." Letters from Mr. Nesselroad accompanying both the check and Mr. Loar's letter indicated that these documents were to have been delivered at the February 11 meeting in satisfaction of the conditions of Paragraph 4(b) and requested that the cancelled meeting be rescheduled.

By letter dated February 18, 1985, Mr. Kauffman advised Mr. Nesselroad that the

---

**1.** A letter of intent to this effect had been executed by Americare Corp. on February 9 or 10, 1985.

letter from Mr. Loar did not satisfy the "Preliminary Commitment" requirement of Paragraph 4(b). Mr. Kauffman further advised Mr. Nesselroad that as a result of Glenmark's failure to provide adequate evidence of the availability of financing, Americare considered the agreement terminated.

On March 7, 1985, Glenmark deposited in an escrow account the $50,000 required to obtain the forty-five day extension under Paragraph 4(c). By letter dated that same day, Mr. Loar informed Glenmark that its application for a loan had been approved.

On March 12, 1985, Glenmark instituted a declaratory judgment action in the Circuit Court of Monongalia County seeking a declaration of its right to purchase the stock of Morgantown Health Care Corp. under the stock purchase agreement.[2] After the expiration of the forty-five day extension period, Glenmark amended its complaint seeking specific performance of the agreement, or in the alternative, compensatory damages of at least $100,000.

In pre-trial depositions, Mr. Bradeen, Mr. Kauffman and Mr. Nesselroad testified as to their understanding of the terms of Paragraph 4(b) and to Glenmark's attempts at compliance. On January 23, 1986, the appellees filed a motion in limine to exclude all evidence offered by Glenmark to explain, modify or contradict the terms of the stock purchase agreement on the ground that such evidence violated the parol evidence rule and was not admissible at trial. The same day, the appellees filed a motion for summary judgment.

By memorandum order entered February 27, 1986, the circuit court ruled that the language of Paragraph 4(b), when read in conjunction with the entire agreement, clearly contemplated that written evidence of the availability of financing was to be provided by Glenmark prior to the end of the initial thirty-day term as a condition precedent to the granting of an extension and that parol evidence was not admissible to vary or contradict this requirement. The court concluded that Glenmark's fail-

ure to provide such a writing within the initial thirty-day period effectively terminated the agreement and entered summary judgment in favor of the appellees.

■ The key issue in this appeal is whether the trial court erred in refusing to consider extrinsic evidence as to the meaning of Paragraph 4(b). The parol evidence rule has been stated as follows:

"Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of the consideration." Syllabus point 1, *Kanawha Banking and Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947).

Syllabus point 1, *North American Royal Coal Co. v. Mountaineer Developers, Inc.*, 161 W.Va. 37, 239 S.E.2d 673 (1977). Parol evidence may, however, be used to explain uncertain, incomplete or ambiguous contract terms. *Holiday Plaza, Inc. v. First Federal Savings and Loan Ass'n of Clarksburg*, 168 W.Va. 356, 285 S.E.2d 131 (1981); *International Nickel Co. v. Commonwealth Gas Corp.*, 152 W.Va. 296, 163 S.E.2d 677 (1968); *Berkeley County Public Service Dist. v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968).

■ The written agreement executed by these parties does not specify the time for performance of the conditions of Paragraph 4(b) or expressly make time of the essence of the contract. Such omissions create an ambiguity in the written agreement which will admit of parol evidence to determine the intention of the parties. *See Creasy v. Tincher*, 154 W.Va. 18, 173 S.E.2d 332 (1970); *Adams v. Guyandotte Valley Ry. Co.*, 64 W.Va. 181, 61 S.E. 341 (1908). " 'Where a contract is ambiguous then issues of fact arise and summary judgment is ordinarily not proper.' Syl.Pt. 2, *Lee Enterprises, Inc. v. Twentieth Cen-*

---

**2.** Glenmark also sought, and obtained, a temporary injunction preserving the status quo with respect to ownership of the stock and assets of Morgantown Health Care Corp.

*tury–Fox Film Corp.*, 172 W.Va. 63, 303 S.E.2d 702 (1983)." Syllabus point 2, *Buckhannon Sales Co. v. Appalantic Corp.*, 175 W.Va. 742, 338 S.E.2d 222 (1985).

Moreover, even if Glenmark was required to perform the conditions of Paragraph 4(b) prior to the expiration of the initial thirty-day period, the requirement that performance occur within a specified time may be waived by the subsequent agreement or conduct of the parties. *Bailey v. Savage*, 160 W.Va. 523, 236 S.E.2d 203 (1977); *Collins v. Thomas*, 87 W.Va. 597, 105 S.E. 897 (1921); *Wheeling Creek Gas, Coal & Coke Co. v. Elder*, 54 W.Va. 335, 46 S.E. 357 (1903). Parol evidence is admissible to show a subsequent waiver of a provision or condition of a written agreement. *Mundy v. Arcuri*, 165 W.Va. 128, 267 S.E.2d 454 (1980). *See Steinbrecher v. Jones*, 151 W.Va. 462, 153 S.E.2d 295 (1967).

The appellant here produced evidence that Mr. Bradeen had agreed to allow Mr. Nesselroad to bring a $5,000 check and evidence of the availability of financing to the meeting scheduled for February 11, 1985 in satisfaction of the requirements of Paragraph 4(b). Other evidence indicated that when Mr. Bradeen cancelled the meeting, he agreed to a further delay in performance of the conditions of Paragraph 4(b). Mr. Kauffman stated that Glenmark's delay in performance was not a factor in Americare's decision to consider the agreement terminated.

At the very least, this evidence raises a factual issue as to whether the appellees waived any requirement that Glenmark perform the conditions precedent to the granting of an extension prior to the expiration of the initial thirty-day period. The well-settled rule in summary judgment cases is: "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). Accordingly, we conclude that the circuit court was clearly wrong in granting summary judgment on the ground that the appellant's performance of the conditions of Paragraph 4(b) was not timely.

We further note that the parties to this appeal devote much discussion to the issue of whether Glenmark's production of the letter of intent from Mr. Loar complied with the "Preliminary Commitment" requirement of Paragraph 4(b). Although the circuit court did not address this issue, and its resolution is not necessary to our disposition of this case, it appears that the adequacy of Glenmark's performance of this condition will be of paramount importance on remand. Accordingly, we offer the following observations.

First, we note that there is a degree of uncertainty as to the meaning of the phrase "Preliminary Commitment." The plain wording of the agreement indicates that the parties intended some written evidence of the availability of financing, but gives no clue as to the form or content of the writing contemplated thereunder. The phrase is not defined in the agreement or in any dictionary to which we have been directed, nor is there any evidence that the phrase is a term of art or has a peculiar meaning in this context. As the meaning of the phrase "Preliminary Commitment" cannot be determined from the written agreement itself, resort must be had to extrinsic evidence and the general rules of contract construction to determine the intent of the parties and the adequacy of Glenmark's performance of this condition. *See Sally–Mike Properties v. Yokum*, 175 W.Va. 296, 332 S.E.2d 597 (1985); *Columbia Gas Transmission Corp. v. E.I. Dupont de Nemours Co.*, 159 W.Va. 1, 217 S.E.2d 919 (1975); *Blue Creek Development Co. v. Howell*, 101 W.Va. 748, 133 S.E. 699 (1926).

In addition, the agreement clearly contemplates an alternative means of compliance, providing that the condition may be satisfied by "other evidence reasonably acceptable to Seller showing the availability of financing subject only to the usual and customary conditions contained in commit-

ments of this type." If it can be shown that Americare agreed to accept something other than a written "Preliminary Commitment" as satisfactory evidence of the availability of financing and that Glenmark provided such evidence, then the agreement is binding. *See* 17A C.J.S. *Contracts* § 455 (1963).

In view of our decision as to the propriety of summary judgment in this case, we find it unnecessary to address the other issues raised by the parties. For the reasons stated herein, the judgment of the Circuit Court of Monongalia County is reversed, and the case is remanded to that court for further proceedings.

Reversed and remanded.