391 S.E.2d 891

**OHIO VALLEY CONTRACTORS, INC.**

v.

**The BOARD OF EDUCATION OF WET-
ZEL COUNTY, etc. and Joseph H.
Baker & Associates, etc.**

No. 19044.

Supreme Court of Appeals
of West Virginia.

March 29, 1990.

William B. Richardson, Jr., Richardson & Richardson, Orville L. Hardman, Parkersburg, for Ohio Valley Contractors, Inc.

A.L. Emch, Jennifer Z. Cain, Jackson & Kelly, New Martinsville, for Bd. of Educ. of Wetzel County.

PER CURIAM:

This is an appeal by Ohio Valley Contractors, Inc. from a summary judgment order entered by the Circuit Court of Wetzel County in a contract case. The principal issue in the case below was whether the Board of Education of Wetzel County was liable to Ohio Valley for some excavation they performed. The circuit court concluded that there was "no genuine issue as to any material fact" and awarded summary judgment and costs to the Board of Education. On appeal, Ohio Valley claims that there are questions of material fact: namely, (1) what was the reason for excavating the site to bedrock; (2) did the architect direct Ohio Valley to perform the additional excavation; and (3) did the Board of Education, either by contract or subsequent agreement, authorize the additional excavation.

In 1976, the Board of Education, as part of construction of a new elementary school, invited bids for site development and preparation work. Ohio Valley's bid of $140,000 was accepted and the Board of Education and Ohio Valley entered into an agreement dated October 4, 1976 (hereinafter, the contract). Under the contract the entire building area was to be excavated to an elevation of 1002.0′ and filled with approximately six feet of appropriate material. To reach the specified elevation an excavation of six feet was required. However, an additional six feet of excavation was done. Ohio Valley sought payment of $98,674.15 over the bid price for the additional excavation and back fill. The Board of Education refused. There is no dispute concerning the quality of the work. However, the Board of Education, by counterclaim, sought $3,425.00 ($25 per day) in liquidated damages for Ohio Valley's failure to complete timely the contract work. Both parties cite different sections of the contract as justification for their respective positions concerning who should bear the cost of the additional work.[1]

Ohio Valley argues that the contract gave the architect, Joseph H. Baker & Associates, authority to order excavation to a lower level without any additional requirement of notice to or approval by the Board

---

1. Pursuant to the subsection 38 of the General Conditions section of the contract, the dispute was submitted to arbitration. In September 1977, the arbitration tribunal awarded Ohio Valley $73,043.58 for the additional excavation, denied the Board of Education's counterclaim based on untimeliness, and assessed fees and expenses to the Board of Education. Both parties rejected the award. We note that *Board of Education of the County of Berkeley v. W. Harley Miller, Inc.*, 160 W. Va. 473, 236 S.E.2d 439 (1977), does not apply because both parties rejected to the arbitration award.

Then, Ohio Valley, through an assignee, attempted to sue individual members of the Board of Education in the United States District Court for the Northern District of West Virginia in the amount of $115,179.90 (*Shirley A. Epling v. Richard Schnacke, et al.*, Civil Action No. 77–111–C). By order dated March 14, 1979, the District Court granted the defendants' motion to dismiss noting that it lacked jurisdiction because the claim was assigned to invoke diversity jurisdiction.

Finally, Ohio Valley filed this action in the Circuit Court of Wetzel County against the Board of Education and the architect. The Board of Education filed a motion to dismiss alleging governmental immunity. The architect filed a motion for summary judgment alleging a lack of jurisdiction. The circuit court granted both motions. Ohio Valley did not appeal the dismissal of the architect, but did appeal the circuit court's dismissal of the Board of Education. On appeal we reversed the circuit court's dismissal of the Board of Education and remanded the case. *See Ohio Valley Contractors v. Board of Education of Wetzel County,* 170 W. Va. 240, 293 S.E.2d 437 (1982).

On remand, the Board of Education filed a motion for summary judgment that was granted and this appeal followed.

of Education. The contract, Division 2, Section 2A, subsection 5 d) 1) provides:

Entire building area to be excavated to contract elevation of 1002.0'. Bottom of excavation shall extend beyond (outside of) exterior building lines eighteen feet (18'). If excavation to this dept results in bottom of excavation being in unsuitable layer, architect may direct that excavation be extended to a lower elevation. Compensation for such extension will be computed from unit price quoted for added excavation.

According to a letter dated January 18, 1977 from Ohio Valley to the architect, Ohio Valley was directed on October 7, 1976 by Mr. Swank of the architect's firm to excavate the area to bedrock, because of poor subsoil conditions. Ohio Valley argues that because the architect directed the additional excavation and the contract specifically granted that authority to the architect, Ohio Valley should be paid for the additional work. In addition, Ohio Valley notes that the Board of Education was informed of the architect's decision and allowed the excavation to continue.

The Board of Education argues that Ohio Valley's bid application acknowledged familiarity with the site and soil conditions. The Board of Education points out that the contract in the General Conditions section requires that all changes in work or contract amount be made by a written change order.[2] The Board of Education claims there was no change order for the additional work. The contract makes the architect the interpreter of requirements of the con-

tract and limits the authority of the architect to make changes that require additional payment by the owner.[3] Finally the Board of Education claims that Ohio Valley elected, at its own option and without additional cost to the Board of Education, to perform the additional excavation work as an alternative to dewatering the site under Division 2, Section 2A, subsection 5 d) 2) of the contract. That section provides:

Excavation of soft subsoils will extend below ground water level (see boring logs). The entire area which is to be excavated and filled must be dewatered by any method elected by contractor. It must be made water-free and maintained so until controlled fill is completed and accepted. As alternative to dewatering, contractor may excavate material underwater to bedrock, and replace with large rock fragments, such as broken sandstone, to one foot above the ground water line by end dumping. Above this level the fill shall consist of material from site, properly mixed, dried and compacted as specified. If contractor elects this alternative, cost of same shall be included in the base bid sum.

In response, Ohio Valley maintains that it did not elect to perform the additional excavation as an alternative to dewatering, but was directed to perform the additional excavation by the architect—excavation covered by a specific contract provision giving the architect authority independent of the General Conditions section of the contract, to order additional excavation. Ohio

---

2. Subsection 28 of the General Conditions section of the contract provides in pertinent part:
Contract Sum and Contract Time may be changed only Change Order.
In giving instructions, Architect shall have authority to make minor changes in Work, not involving extra cost, and not inconsistent with purpose of Project.
The contract defines a change order as:
Written order to Contractor signed by Owner and Architect, issued after execution of the contract, authorizing change in Work or adjustment in Contract Sum or Contract Time may be changed only Change Order. (Contract terms are capitalized.)

3. Subsection 16 of the contract's General Conditions section provides in pertinent part:

Architect will have authority to act on behalf of Owner to extent provided in Contract Documents, unless otherwise modified by written instrument which will be shown to Contractor. . . .
Architect will be, in first instance, interpreter of requirements of Contract Documents and judge of performance thereunder by both Owner and Contractor.
Subsection 30 of the contract's General Conditions section provides:
Architect does not have and will not assume authority to order work, materials, or changes in same that may result in claim for extra payment by any Contractor, and Contractor shall inform his superintendent of this fact or be responsible.

Valley points to a change order dated March 4, 1977 indicating additional charges for the lower excavation.[4] We note that according to correspondence dated December 6, 1976, January 7, 1977 and January 18, 1977, the Board of Education was advised immediately of the additional work. The architect by letter dated January 7, 1977 acknowledges that they conferred with Ohio Valley concerning the additional excavation but believed "it was determined that ... [Ohio Valley would] employ 'the alternative method'" rather than dewatering.

# I

On appeal the issue is whether the trial court erred in holding there was "no genuine issue as to any material fact." We noted that the parties cite different sections of the contract to justify their positions concerning financially responsible for the additional excavation.

■ Although the contract, in general, limits the architect's authority, it also seems to enlarge the architect's authority to authorize additional excavation because of poor soil conditions. Taken as a whole the contract is ambiguous concerning the authorization of the architect to authorize additional excavation and that ambiguity will permit the use of parol evidence to explain the contract terms and to determine the intention of the parties. *Glenmark Associates v. Americare of W. Va.*, 179 W.Va. 632, 371 S.E.2d 353 (1988); *Holiday Plaza, Inc. v. First Federal Sav. and Loan Ass'n of Clarksburg*, 168 W. Va. 356, 285 S.E.2d 131 (1981); Syllabus Point 4, *Watson v. Buckhannon River Coal Co.*, 95 W. Va. 164, 120 S.E. 390 (1923).

> "'Where a contract is ambiguous then issues of fact arise and summary judgment is ordinarily not proper.' Syl. Pt. 2, *Lee Enterprises, Inc. v. Twentieth Cen-tury–Fox Film Corp.*, 172 W.Va. 63, 303 S.E.2d 702 (1983). Syllabus point 2, *Buckhannon Sales Co. v. Appalantic Corp.*, 175 W.Va. 742, 338 S.E.2d 222 (1985)."

Syllabus Point 2, *Glenmark Associates v. Americare of W. Va., Inc.*, 179 W. Va. 632, 371 S.E.2d 353 (1988); *Lee Enterprises v. Twentieth Century–Fox Film Corp.*, 172 W.Va. 63, 303 S.E.2d 702 (1983) (Found summary judgment inappropriate because the contract was ambiguous on the number of episodes permitted to be purchased.).[5]

■ At the very least, the evidence raises the following factual questions: (1) what was the reason for excavating the site to bedrock; (2) did the architect direct Ohio Valley to perform the additional excavation; and (3) did the Board of Education, either by the contract or subsequent agreement, authorize the additional excavation.

■ In Syllabus Point 3, of our landmark case on summary judgment, *Aetna Casualty and Surety Co. v. Federal Insurance Co.*, 148 W. Va. 160, 133 S.E.2d 770 (1963), we stated:

> A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.

In *Board of Education of Ohio County v. Van Buren and Firestone, Architects*, 165 W. Va. 140, 267 S.E.2d 440 (1980) (Reversed summary judgment granted in a school construction case that alleged negligent site preparation), we acknowledged that:

> [W]e have traditionally viewed summary judgment with reservations and have required that the facts of the case be viewed in a light most favorable to the

---

4. The contract change order dated March 4, 1977 specified the change was for an "extension of excavation and filling." The change order estimated additional cost at "approximately $4,000 (to be determined when quantity known)" and the adjusted contract sum at "approximately $144,000."

5. Moreover, even if the parties were required to follow the general provisions of the contract, the requirements could be waived by subsequent agreement of the parties. Parol evidence is admissible to show a subsequent waiver of the contract provisions. *See Mundy v. Arcuri*, 165 W. Va. 128, 267 S.E.2d 454 (1980); *Glenmark*, 179 W.Va. at 636, 371 S.E.2d at 357.

party against whom the judgment was rendered. (Citations omitted.)

*See Eagle Manufacturing Co. v. Ashland Oil, Inc.,* 180 W. Va. 53, 375 S.E.2d 417 (1988); *Lowery v. Raptis,* 174 W. Va. 736, 329 S.E.2d 102 (1985).

Given the ambiguity of the contract, and the lack of evidence on the circumstances surrounding the decision to excavate to bedrock and on the subsequent acts of the Board of Education agreeing to modify the contract requirements, we believe that the circuit court erred in granting summary judgment. Further development of the facts should have been allowed to clarify the contract question and to develop evidence on the excavation decision and the subsequent acts of the parties.

The judgment of the Circuit Court of Wetzel County is, therefore, reversed, and the case is remanded for further development consistent with this opinion.

Reversed and Remanded.