376 S.E.2d 94

**CABOT OIL & GAS CORPORATION OF WEST VIRGINIA, and Cranberry Pipeline Corporation**

v.

**POCAHONTAS LAND CORPORATION.**

No. 17707.

Supreme Court of Appeals of West Virginia.

Nov. 4, 1988.

John C. Palmer, IV, Timothy M. Miller, Robinson & McElwee, Charleston, for Cabot Oil & Gas Corp. of W.Va. and Cranberry Pipeline Corp.

Thomas E. Potter, Thad S. Huffman, Jackson, Kelly, Holt & O'Farrell, Charleston, for Pocahontas Land Corp.

PER CURIAM:

This is a declaratory judgment proceeding involving the rights of parties under an oil and gas lease. The Circuit Court of McDowell County found that the lease agreement was unambiguous and refused to construed it in the manner urged by the appellants, Cabot Oil & Gas Corporation of West Virginia and its subsidiary, Cranberry Pipeline Corporation. On appeal the appellants contend that the lease is ambiguous and that the trial court should have construed it in accordance with the circumstances prevailing at the time it was executed. After reviewing the questions presented, this Court concludes that the appellants' assertions are without merit, and accordingly the Court affirms the judgment of the circuit court.

The Ford Motor Company, as lessor, and Godfrey L. Cabot, Inc., as lessee, entered into the lease in question on April 1, 1945. The lease granted Cabot the sole and exclusive right to drill and operate for oil and gas on 5,537.88 acres owned by Ford in Wyoming and McDowell Counties, West Virginia. It recognized that Ford was

holding the property principally for coal-mining purposes, that the coal estate was the dominant estate, and that the oil and gas interests granted were subservient to the coal estate. The lease also required Cabot to conduct its oil and gas operations so as not to interfere unnecessarily with coal operations which might be conducted on the premises, and it stipulated that Cabot would relocate any facilities, other than oil or gas wells, which might be placed on the premises, if such relocation was required by Ford for any other use of the premises.

Relevant portions of the lease provided: THERE IS EXCEPTED AND RESERVED to Lessor the entire ownership and control of the lands and interests in the lands included herein and the oil, gas, coal, stone, sand, water, timber and other minerals and products therein and thereon with the right to use and dispose of the same, for all purposes other than those for which this lease is made; IT BEING DISTINCTLY UNDERSTOOD AND AGREED that parts or all of the lands herein may be included by Lessor in coal mining leases; that the mining and shipping of coal is of prime importance to Lessor, that the coal measures under said lands are the dominant estate therein, and that the oil and gas estates therein are made servient thereto.

\* \* \* \* \* \*

Where substantial reason exists therefor, the Lessor may require the Lessee to change the location of any of its facilities, other than wells, to some other reasonable location, and the cost of making such change shall be borne by the Lessee.

Pocahontas Land Corporation, the appellee in the present proceeding, has acquired the interests of the Ford Motor Company in the 5,537.88 acre tract. The appellants, Cabot Oil & Gas Corporation of West Virginia and Cranberry Pipeline Corporation, are the successors in interest to the lessee in the 1945 lease, Godfrey L. Cabot, Inc.

On August 1, 1960, the appellee in the present proceeding, Pocahontas Land Corporation, as successor to the Ford Motor Company, leased the coal under certain of the lands covered by the 1945 lease to the Robinson–Phillips Coal Company. That lease was subsequently modified by a supplemental coal agreement. The two coal agreements authorized the Robinson–Phillips Coal Company to engage in both the deep mining and surface mining of coal in the tract covered by the 1945 oil and gas lease.

In 1983, the Robinson–Phillips Coal Company proposed to surface mine the coal near the location of a pipeline belonging to the appellants, the successors to Godfrey L. Cabot, Inc. under the 1945 lease. In preparation for the mining, the Robinson–Phillips Coal Company requested that the appellants relocate the gas line. They likewise contacted the appellee, Pocahontas Land Corporation, the successor to the Ford Motor Company under the 1945 lease, and by letter dated April 14, 1983, Pocahontas Land Corporation, requested that the appellants relocate the line at their expense.

The appellant, Cranberry Pipeline Corporation, the party specifically responsible for maintenance of Cabot Oil & Gas Corporation's pipelines, examined the 1945 lease and concluded that it was not obligated to bear the expense of relocating a pipeline. It noted that the Robinson–Phillips Coal Company proposed to employ the mountaintop removal method to mine the coal, a mining method not employed in 1945. Because the method was not employed in 1945, it reasoned that the parties in 1945 could not have contemplated removal by that method and thus did not cover it by the lease.

After some negotiation, the parties entered into a written agreement dated August 15, 1983, whereby Pocahontas Land Corporation advanced Cranberry Pipeline Corporation $19,315.00 for the cost of relocating the pipeline in question. The agreement provided that a civil action would be instituted by Pocahontas to adjudicate whether it or Cranberry was obligated to relocate the line at its sole expense.

Pursuant to the agreement, Cranberry relocated the line and refunded to Pocahontas $3,279.05, and Pocahontas instituted the present proceeding requesting a declaratory judgment as to the rights and obligations of the parties as to the cost of relocating the pipeline and asking for damages in the amount of $16,035.95, the amount which it had actually paid for relocating the line.

A trial without a jury was conducted by the Circuit Court of McDowell County on May 5, 1986. At the conclusion of that trial the circuit judge concluded that the April 1, 1945 lease was clear and unambiguous and was, therefore, not subject to judicial interpretation or construction. The court also ruled that under the lease Cranberry was obligated to relocate the pipeline at its sole expense. It is from that ruling that the appellants now appeal.

■ This Court has indicated that plain and unambiguous language in an oil and gas lease should be applied and enforced according to its plain intent and should not be construed. The rule is set forth in syllabus point 1 of *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962), as follows:

> A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent.

The Court has also recognized that the successor to a party under an oil and gas lease succeeds to the rights of his predecessor and is bound by the obligations of his predecessor. Again, that rule was set forth in the *Cotiga* case:

> An assignee of an oil and gas lease who has assumed the obligations of the lessee thereunder succeeds only to such rights as the lessee had against the lessor, and the covenants of the lease for the benefit of the lessor become binding upon the assignee in the same manner and degree as originally upon the lessee.

Syllabus point 2, *Cotiga Development Co. v. United Fuel Gas Co., Id.*

The appellant in the present proceeding recognizes the general rule that unambiguous language in an oil and gas lease should be applied and not construed. It, however, points to a line of cases decided by this Court which suggest that where a form of mining was not contemplated at the time the parties entered into a lease and the uncontemplated form was later employed to extract minerals from the leased premises, then the lease should be construed in accordance with the intent of the parties at the time the lease was entered into. The appellant points to the case of *West Virginia–Pittsburgh Coal Co. v. Strong*, 129 W.Va. 832, 42 S.E.2d 46 (1947), as an example of the Court's thinking on this point. In the *West Virginia–Pittsburgh Coal* case, a deed entered into in 1904 was in issue. That deed reserved to the grantor the surface of a tract of land, but granted to the grantee the right to utilize the surface for removal of "all coal under the surface." At the time the deed was entered into, the practice of strip mining was not employed in the locality where the land was located. The Court concluded that, under the circumstances, the deed could not be construed to hold that the parties contemplated and intended that the coal be removed by strip mining purposes.

In the later case of *Oresta v. Romano Brothers*, 137 W.Va. 633, 73 S.E.2d 622 (1952), the principal reason for disallowing the use of a mining technique not contemplated by the parties was to prevent injury to the surface owner not foreseen or contemplated by the parties. The clear focus of the court's thinking was not whether the technique used was contemplated by the parties, but whether the injury which resulted from the use of that technique had been contemplated by the parties. The Court stated:

> [T]here is a pronounced practical distinction between an injury to, or the imposition of a necessary or convenient burden upon, the surface of land containing coal in or underneath the surface, each of which may be caused by the mining and the removal of such coal through and by means of excavations, tunnels, and passageways beneath the surface, or

through and by means of shafts, borings, slopes or entries which extend from an opening on the surface in and to the underlying coal and are located throughout their entire course and extent under the surface, and the destruction, the removal, or the relocation in the mining and the removal of coal, of the overlying surface which necessarily results in substantial measure from the use of the presently recognized strip mining method ... In the first mentioned situation, the surface, even when broken or caused to subside, is damaged, rather than destroyed; but in the second the surface affected is completely disturbed and is either destroyed or moved to a place other than that of its original location. In view of this real and substantial distinction between and injury to, or a burden upon, the surface, in substantially its original location, and the removal of the surface from that location, it is manifest that mining rights which at the time of their creation are intended to limit, regulate and govern operations and methods which are carried out or engaged in chiefly in the coal and beneath the surface, do not apply to, cover, or permit the removal or the relocation of the overlying surface in the mining and the removal of the coal beneath it.

*Oresta v. Romano Brothers, supra* 137 W.Va. at 645–46, 73 S.E.2d at 629–30.

■ It appears to this Court that when the Ford Motor Company and Godfrey L. Cabot, Inc. entered into the lease in question in the present case in 1945, the parties clearly contemplated that there would be mining of the coal under the property in the future and that such coal mining might require the relocation of oil and gas production facilities. They also clearly agreed that if such relocation was necessary, Godfrey L. Cabot, Inc. would bear the cost of that relocation. The parties also agreed that the coal estate was the dominant estate in the property and that the oil and gas interests were subservient to that coal estate.

This Court believes that the wording of the lease is unambiguous and that, under the rules discussed above, it should be applied rather than construed. The Court also believes that the parties contemplated that the surface of the land might be substantially disturbed and that such disturbance might require relocation of the oil and gas facilities. The lessee's rights were, in effect, made subject to the lessor's right to disturb the surface and to require the lessee to remove his facilities.

In view of the fact that the parties contemplated that the lessee's rights were limited in that they were expressly subject to disturbance of the surface and were expressly subject to the obligation of the lessee to remove its oil and gas lines, the Court believes that even if the lease were construed in accordance with the line of cases relating to mining methods not in common use at the time the lease was entered into, the result in this case would be the same. The mining methods employed by Robinson–Phillips Coal Company did not result in injury not contemplated by the parties in 1945. In effect, the lessee's rights with regard to the surface were limited in 1945, and the actions of the lessor's successor forty some years later did not infringe upon those rights.

For the reasons stated, the judgment of the Circuit Court of McDowell County is affirmed.

AFFIRMED.