438 S.E.2d 1

John MILLS, Plaintiff Below, Appellant

v.

USA MOBILE COMMUNICATIONS, INC., a Domestic Corporation, and Jack W. Fuellhart, Individually, Defendants Below, Appellees.

No. 21761.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 1993.

Decided Oct. 29, 1993.

Larry E. Thompson, Della Cline, Thornsbury & Thompson, Williamson, for plaintiff.

Robert P. Martin, Mark A. Robinson, Myer, Darragh, Buckler, Bebenek & Eck, Charleston, for defendants.

MILLER, Justice:

John Mills, the plaintiff below, appeals the final order of the Circuit Court of Mingo County, dated November 6, 1992. He contends that the trial court erred in granting summary judgment for all of the defendants except USA Mobile Communications, Inc., and Jack Fuellhart, and in striking from the verdict the damages the jury awarded for malicious prosecution. We have reviewed the record and find no error; accordingly, we affirm the final judgment of the Circuit Court of Mingo County.

## I.

John Mills owned a one-third interest in Selectavision, a cable television company that operated in Mingo County. The plaintiff also owned Tug Valley Radiotelephone and Paging (Tug Valley). During the winter of 1986, Jack Fuellhart, as a representative for Cable Systems USA, Associates (Cable Systems), a Pennsylvania limited partnership, sought to purchase Selectavision from Mr. Mills. While negotiating the sale, Mr. Fuellhart became interested in purchasing Tug Valley as well because he needed a way for the trucks in his cable business to communicate with each other.

On June 26, 1986, the plaintiff sold his interest in Selectavision to Cable Systems for $25,000.[1] During the closing on Selectavision, Jack Fuellhart gave the plaintiff a letter of intent to purchase all the assets of Tug Valley for $172,000. Soon thereafter, Jack Fuellhart, Janice Fuellhart, Peter Graf, Steve Richman, and Gerhard Waldshutz[2] formed West Virginia Mobile Communications, a West Virginia corporation, to purchase Tug Valley. West Virginia Mobile Communications' name was later changed to USA Mobile Communications.[3] Janice Fuellhart was designated the president of this newly formed corporation.

Because none of the principals in USA Mobile Communications had experience in the mobile paging business, they asked the plaintiff to work for the company. The plaintiff agreed, and, in August of 1986, he quit his job with the Chesapeake and Potomac Telephone Company and began working full time for USA Mobile Communications.[4] His office was in the same building as Cable Systems, and he received his paycheck from an accounting firm retained by the cable company.

Approximately one month later, on September 3, 1986, USA Mobile Communications signed an Asset Purchase Agreement with the plaintiff to acquire Tug Valley for $172,000. Clause 9(1) of the Agreement provided as follows:

> "*Conditions Precedent to Buyer's Obligations.* All of the Buyer's obligations at the Closing hereunder are subject, at the option of Buyer, to the fulfillment of each of the following conditions at or prior to

---

1. It appears that at the time Cable Systems purchased Selectavision, Mr. Mills was involved in litigation with his former partners. When Jack Fuellhart negotiated the purchase of Selectavision, he paid Mr. Mills $25,000 in consideration for Mr. Mills' foregoing any interest he may have had in the company.

2. These individuals are also partners of Cable Systems.

3. In this opinion, we will refer to West Virginia Mobile Communications and USA Mobile Communications collectively as USA Mobile Communications.

4. According to the plaintiff, he was to be paid a $55,000 salary the first year with a guaranteed increase to $100,000 the second year. He also was supposed to receive two percent of the stock of each mobile telephone system acquired by West Virginia Mobile Communications as a result of his efforts.

Closing and the seller agrees to use its respective best efforts to fulfill each such condition:

\*    \*    \*

"(1) Buyer and John N. Mills shall have entered into any [sic] employment agreement in form and substance reasonably satisfactory to Mills and Buyer pursuant to which among other things, *Mills shall manage the System for a period of five years after the Closing.*" (Emphasis Added).[5]

In January, 1987, USA Mobile Communications opened a corporate account and began paying Mr. Mills' salary directly from that account. Despite her initial confidence in Mr. Mills, Janice Fuellhart soon became dissatisfied with his job performance. In November, 1987, after numerous attempts to resolve their differences, Janice Fuellhart stopped paying Mr. Mills' salary.

In January, 1988, Mr. Mills went onto USA Mobile Communication's property and began taking personal items he claimed Jack Fuellhart had told him he could store there. After witnessing Mr. Mills' actions, Skip James, an employee of Cable Systems, called Janice Fuellhart and explained to her what was happening. She instructed Mr. James to secure a warrant for the plaintiff's arrest. Subsequently, the police arrested the plaintiff at his home on a charge of grand larceny; however, the charge was later dismissed.

Plaintiff initially filed suit in July of 1988, but amended the complaint twice, with his second amended complaint being filed on March 29, 1989. The plaintiff sued Cable Systems, USA Mobile Communications, Jack Fuellhart, Janice Fuellhart, Peter Graf, Steve Richman, Gerhard Waldshutz, and Skip James. The plaintiff alleged a breach of the employment contract, fraud, malicious prosecution, and harassment.

Following extensive discovery, all the defendants moved for summary judgment. The matter was heard by the circuit court on April 23, 1990. By an order dated May 2, 1990, the circuit court granted summary judgment for all the defendants except USA Mobile Communications and Jack Fuellhart on the malicious prosecution and harassment claims and for all the defendants except USA Mobile Communications on the breach of contract claim.[6]

The case went to trial on November 4, 1991. Three days later, the jury returned the following verdict for the plaintiff against the corporation, USA Mobile Communications:

| | | |
|---|---|---:|
| (1) | Lost wages | $290,949.98 |
| (2) | Value of Corporate Stock | 248,400.00 |
| (3) | Harassment | 10,000.00 |
| (4) | Malicious Prosecution | 137,500.00 |
| | TOTAL AWARD | $686,849.98 |

The jury also found Jack Fuellhart liable on the harassment and malicious prosecution claims.

Thereafter, the defendants filed a motion for judgment notwithstanding the verdict, a motion for a new trial, and a motion for relief from the judgment. After conducting a hearing on the motions, the trial court found that the record was devoid of any evidence that Jack Fuellhart or USA Mobile Communications was liable for malicious prosecution. Accordingly, the trial court struck the $137,500 compensatory damage award for the malicious prosecution count from the final jury verdict.[7]

On November 6, 1992, the trial court issued its final order finding that the plaintiff could recover from USA Mobile Communications the sum of $549,349.98 plus interest. The plaintiff appeals.[8]

---

5. This provision in the Agreement is the only signed written documentation that the defendants wanted to hire the plaintiff. The parties never entered into a formal employment contract.

6. The trial court dismissed the fraud count because it found that the plaintiff had failed to state this cause of action with particularity as required by Rule 9(b) of the West Virginia Rules of Civil Procedure. The plaintiff does not appeal this ruling.

7. Jack Fuellhart was also granted judgment notwithstanding the verdict on the harassment claim.

8. Although not directly stated in the plaintiff's brief, it appears that the defendant corporation does not have sufficient assets to satisfy the judgment.

## II.

■ As earlier noted, following extensive discovery, the trial court granted the defendants' motion for summary judgment pursuant to Rule 56 of the West Virginia Rules of Civil Procedure.[9] In the Syllabus of *Hanks v. Beckley Newspapers Corp.* 153 W.Va. 834, 172 S.E.2d 816 (1970), we recognized when the granting of summary judgment is proper:

"A motion for summary judgment should be granted if the pleadings, affidavits or other evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*See also Aetna Casualty & Sur. Co. v. Federal Ins. Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

With this basic rule of law as our guide, we address the plaintiff's assertion that the trial court erred in granting summary judgment for all the defendants except USA Mobile Communications on the breach of contract count. The trial court granted summary judgment for the other defendants because the plaintiff's employment contract was exclusively with USA Mobile Communications. Nonetheless, the plaintiff argues that the individual stockholders of the corporation also should be liable. We disagree.

■ Although stockholders were not immune from liability for corporate obligations at common law, such insulation has been the cornerstone of corporate law since the nineteenth century, and virtually every state now has a statute limiting a stockholder's liability

to the cost of the shares held. *See generally* 18A Am.Jur.2d *Corporations* § 850 (1985 & Supp.1993). Our statute, W.Va.Code, 31–1–89 (1974),[10] provides, in pertinent part:

"A holder of or subscriber to shares of a corporation shall be under no obligation to the corporation or its creditors with respect to such shares other than the obligation to pay to the corporation the full consideration for which such shares were issued or to be issued."

Thus, where the corporate shares have been fully paid for, the subscriber or stockholder is not liable for the debts of the corporation. As we recognized in *Laya v. Erin Homes, Inc.,* 177 W.Va. 343, 346, 352 S.E.2d 93, 97 (1986): "[A] corporate shareholder's liability is usually limited to his or her capital investment in the corporation, and the shareholder is normally not liable individually to a creditor of the corporation." *See generally* 18A Am.Jur.2d *Corporations* § 850.

■ As have most courts, we have recognized instances in which the corporate entity may be disregarded. These include situations where the corporate form is being used to perpetrate injustice, defeat public convenience, or justify wrongful or inequitable conduct. *See, e.g., Laya v. Erin Homes, Inc., supra; Southern States Co-Op., Inc. v. Dailey,* 167 W.Va. 920, 280 S.E.2d 821 (1981); *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1968);[11] *William C. Atwater & Co. v. Fall River Pocahontas Collieries Co.,* 119 W.Va. 549, 195 S.E. 99 (1937).[12] Because a contract with

---

9. Rule 56(b) of the West Virginia Rules of Civil Procedure states, in pertinent part: *"For defending party.—A party against whom a claim, counterclaim, or cross-claim is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof."*

10. W.Va.Code, 31–1–89, supplanted similar provisions in W.Va.Code, 31–1–35 and –36 of the 1931 West Virginia Code. Section 2 of Article XI of the West Virginia Constitution states: "The stockholders of all corporations and joint stock companies, except banks and banking institutions, created by laws of this State, shall be liable for the indebtedness of such corporations to the amount of their stock subscribed and unpaid, and no more."

11. In Syllabus Point 10 of *Sanders v. Roselawn Memorial Gardens, Inc., supra,* we said:

"While, legally speaking, a corporation constitutes an entity separate and apart from the persons who own it, such is a fiction of the law introduced for purpose of convenience and to subserve the ends of justice; and it is now well settled, as a general principle, that the fiction should be disregarded when it is urged with an intent not within its reason and purpose, and in such a way that its retention would produce injustices or inequitable consequences."

12. Syllabus Point 4 of *Atwater, supra,* states: "Generally, the application of the so-called instrumentality rule will not be made in haphazard disregard of the entity of a corporation. The corporate veil, nevertheless, will be torn away

a corporation is a contract with that legal entity and not the individual stockholders, courts are even more reluctant to disregard the corporate entity when the dispute involves a contract as opposed to a tort. As explained in 1 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.85 (perm. ed. rev. vol. 1990):

"This is because the party seeking relief in a contract case is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of the limited liability associated with the corporate business form, which is not the situation in tort cases.... Thus, under contract law, the disappointed may not hold the other liable without additional compelling facts." [13] (Footnotes omitted).

*See also Labadie Coal Co. v. Black,* 672 F.2d 92 (D.C.Cir.1982); *United States v. Jon–T Chems., Inc.,* 768 F.2d 686 (5th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986); *Main Bank of Chicago v. Baker,* 86 Ill.2d 188, 56 Ill.Dec. 14, 427 N.E.2d 94 (1981); *Gray v. Edgewater Landing, Inc.,* 541 So.2d 1044 (Miss.1989); *Miller v. Dixon Indus. Corp.,* 513 A.2d 597 (R.I. 1986).

■ We do not hold that the corporate entity may never be disregarded in a contract action. As the Mississippi Supreme Court recognized in *Gray v. Edgewater Landing, Inc.,* 541 So.2d at 1047, the corporate veil may be pierced if,

"the complaining party ... demonstrate[s]: (a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." (Citations omitted).

*See generally* 1 William M. Fletcher, *Fletcher Cyc. Corp.* § 41.85 (perm. ed. rev. vol. 1990).

■ In this case, the plaintiff did not present the type of evidence to warrant fastening liability on the individual stockholders of USA Mobile Communications. The plaintiff's chief complaint was that he gave up a job which he had held seventeen years and which had a good salary and excellent health and retirement benefits. He claims that he was "lured" into doing this by the "wining and dining" of Mr. and Mrs. Fuellhart and by the lavish way Mr. Fuellhart traveled to Mingo County, i.e., either by helicopter or hired limousine. Moreover, the plaintiff contends that he was promised a high salary starting at $55,000 and reaching $100,000 in the second year.

As we have earlier noted, his salary was not incorporated into the asset purchase agreement. However, the trial court allowed the jury to hear this evidence. There may have been inflated promises made, but we do not find that these promises formed the basis for imposing stockholder liability on the verdict against the corporation. We conclude that the lower court was correct in granting summary judgment as to these defendants.[14] We, therefore, affirm the judgment of the Circuit Court of Mingo County.

Affirmed.

---

whenever the occasion arises to prevent a fraud or a wrong."

**13.** In *Bowling v. Ansted Chrysler–Plymouth–Dodge, Inc.,* 188 W.Va. 468, 425 S.E.2d 144 (1992), we held in Syllabus Point 3: "An officer of a corporation may be personally liable for the tortious acts of the corporation, including fraud, if the officer participated in, approved of, sanctioned, or ratified such acts."

**14.** With regard to the trial court's setting aside of the malicious prosecution damage award, the plaintiff only appeals that portion exonerating Mr. Fuellhart. The evidence at trial was undisputed that Mr. Fuellhart had nothing to do with procuring the warrant for the plaintiff's arrest. Accordingly, we find no error.