438 S.E.2d 586

**KELLEY, GIDLEY, BLAIR & WOLFE, INC., Plaintiff Below, Appellant,**

v.

**CITY OF PARKERSBURG, A Municipal Corporation, Acting By and Through the PARKERSBURG SANITARY BOARD, Defendant Below, Appellee.**

No. 21762.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 28, 1993.

Decided Dec. 10, 1993.

W.T. Weber, Jr., Weston, for appellant.

Joseph M. Brown, Ronning & Brown, Parkersburg, for appellee.

PER CURIAM:

This is an appeal by Kelley, Gidley, Blair & Wolfe, Inc. ("Kelley" or "the Appellant") from a December 11, 1992, order of the Circuit Court of Marion County granting summary judgment to the City of Parkersburg, acting by and through the Parkersburg Sanitary Board ("Parkersburg" or "the Appellee"). The lower court ordered that Parkersburg pay Kelley $36,839.78 rather than the $140,755.00 to which Kelley deems itself entitled. Kelley requests this Court to reverse the lower court's decision and award it the entire $140,755.00. We affirm the decision of the lower court.

### I.

On July 14, 1977, the Appellee and Kelley entered into an agreement under which Kelley was to provide certain engineering services with respect to the design and construction of improvements to the Appellee's wastewater treatment system and plant. The Appellee had been awarded a federal grant through the Environmental Protection Agency and the West Virginia Department of Natural Resources ("EPA/DNR") to upgrade the treatment plant to comply with EPA/DNR standards. By August 1986, the parties had experienced disagreements over the quality of work performed by Kelley, and the Appellee instituted a civil action against Kelley and other contractors for their negligence and unworkmanlike construction on the project. The Appellee specifically contested Kelley's counterclaim that Kelley was owed $284,375.56, and the Appellee never agreed that the specified sum was in fact owed to Kelley.

A pre-trial settlement between the parties was memorialized in an August 16, 1989, agreement entitled "Settlement Agreement and Release."[1] The only portion of the agreement presently in dispute is paragraph six which provides as follows:

6. Parkersburg and KGB & W agree, settle, and compromise KGB & W's counterclaim against Parkersburg as follows:

a. Parkersburg shall pay to Kelley, Gidley, Blair & Wolfe the sum of Ninety Thousand and 00/100 ($90,000.00) upon receipt from KGB & W of the One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) to be paid pursuant to Paragraph No. 1.a. hereof.

b. Parkersburg has applied for a grant amendment with West Virginia Department of Natural Resources (hereinafter referred to as "DNR") and/or the United States Environmental Protection Agency (hereinafter referred to as "EPA") to obtain seventy-five percent (75%) or such percentage as may be allowed by DNR and/or EPA of the $284,375.56 invoiced and counterclaimed by KGB & W. The application for a grant amendment was approved by both Parkersburg and

---

1. Pursuant to this agreement, the Appellee was paid $534,500.00 less $90,000.00 returned to Kelley (representing the deductible Kelley had on its $1,000,000.00 insurance coverage), for a net payment to the Appellee of $444,500.00 in incremental payments. The balance of $465,500.00 was paid by Kelley's insurer.

KGB & W and submitted to DNR and/or EPA. All parties will use their respective best efforts to expeditiously process said application.

c. Upon receipt by Parkersburg of the payment of the federal share of KGB & W's eligible engineering costs, Parkersburg shall immediately pay to KGB & W the amount received from DNR and/or EPA.

Pursuant to paragraph six, the Appellee applied for an amendment to the grant and received $140,755.00 from the EPA/DNR on July 9, 1990.[2] The Appellee thereafter calculated the amount owed to Kelley and tendered a check in the amount of $70,061.00 to Kelley. The check was refused and returned to the Appellee with an accompanying demand for payment of the entire amount of $140,755.00. The Appellee refused to pay Kelley any additional sum.[3]

Kelley commenced this action in the Circuit Court of Kanawha County, and both parties filed motions for summary judgment. Judge Patrick Casey thereafter transferred this action, sua sponte, to the Circuit Court of Marion County, and the parties renewed their motions for summary judgment. Mike Johnson, a professional engineer and Branch Head for the Department of Commerce, Labor and Environmental Resources, Division of Natural Resources, Water Resources Section, in Charleston, West Virginia, submitted two affidavits[4] explaining the procedure for determining grant amounts. Debbie Shreeves, treasurer for the Appellee, also submitted an affidavit identifying which of Kelley's specific invoices were affected by the increased time and dollar amounts reflected in the grant amendment.[5]

The lower court, based upon this information, concluded that the "eligible engineering costs" referenced in the settlement agreement included only $36,839.78 in unpaid invoices owed to Kelley. The remainder of the $140,755.00 federal amount received by the Appellee, or $103,915.22, had already been paid by the Appellee to Kelley. Thus, the lower court ordered the Appellee to pay Kelley only the sum of $36,839.78, without interest. The lower court found that the language of the settlement agreement was ambiguous and concluded that it "leaves open the question as to whether plaintiff is entitled to the entire sum of any grant increase received by defendant (6b) or only plaintiff's 'eligible engineering costs' (6c)." Given that ambiguity, the lower court deemed it necessary to refer to the granting agency for assistance in interpretation and found that the affidavit of Mike Johnson dated October 23, 1993, identified the purpose of the additional $140,755.00 grant as compensation to the Appellee for the costs it had previously paid Kelley ($103,915.22) as well as to provide funding for the outstanding debt of $36,839.78.

## II.

The Appellant contends that the language of paragraph six of the settlement agreement

---

**2.** The grant amendment extended the time covered by the grant and the dollar amounts which would be grant eligible for various types of engineering work. The specific subject of the amendment was grant eligible engineering fees of Kelley, those services performed within the extended grant time and within the increased grant eligible amounts. Parkersburg maintains that the request for the grant included both Kelley's invoice amounts which were the subject of the counterclaim and invoice amounts previously paid by Parkersburg and not the subject of the counterclaim or paragraph six of the settlement agreement.

**3.** The calculation through which the Appellee determined the $70,061 amount was later deemed to be in error, according to the Appellee's brief. The $36,839.78 figure was thereafter calculated as the appropriate amount.

**4.** As noted by the circuit court, the two affidavits of Mike Johnson appear at first glance to contradict one another. The March 12, 1992, affidavit would seem to indicate that the entire grant increase represents eligible engineering costs of Kelley, while the subsequent October 23, 1991, affidavit clearly provides that the purpose of the grant increase was to compensate the Appellee for the costs it had *previously* paid to Kelley ($103,915.22) *and* to provide an additional sum for payment of Kelley for debts due and owing ($36,839.78).

**5.** No objections were made to the submission of these affidavits. Even on appeal to this Court, the only assertions regarding these affidavits involve the issue of whether they were admissible as extrinsic evidence of the negotiations, as addressed within the body of this opinion.

is clear and unambiguous and that no extrinsic evidence should have been permitted to contradict, add to, detract from, or otherwise vary the unambiguous terms of the settlement agreement. The Appellant further contends that failure to compel payment of the entire $140,755.00 to Kelley constitutes unjust enrichment to the Appellee.

We first address the alleged ambiguity of the settlement agreement language, specifically considering the meaning of the term "eligible engineering costs" within paragraph 6c of that agreement. It is impossible to ascertain the precise meaning of the term "eligible engineering costs" without some understanding of the grant process which underlies this whole question. Did that language, for instance, refer to the entire amount originally owed to Kelley, the amount counterclaimed in the civil action, only the remaining amount not previously paid by the Appellee, or the entire amount received by the Appellee from EPA/DNR? That reference to "eligible engineering costs" is susceptible to more than one interpretation and must, as the lower court concluded, be deemed ambiguous.

■ We have consistently held the following:

" 'When a written contract upon its face is couched in such terms as to import a legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent of the undertaking were reduced to writing. Parol evidence will not be admitted to vary its terms.' Syllabus point 1, *Jones v. Kessler*, 98 W.Va. 1, 126 S.E. 344 (1925)." Syllabus Point 1, *W.L. Thaxton Constr. Co. v. O.K. Constr. Co.*, [170] W.Va. [657], 295 S.E.2d 822 (1982).

Syl. Pt. 3, *First Nat'l Bank v. Clark*, 181 W.Va. 494, 383 S.E.2d 298 (1989), *overruled on other grounds by Coonrod v. Clark*, 189 W.Va. 669, 434 S.E.2d 29 (1993). We have also explained:

Extrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract

from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration.

Syl. Pt. 1, *Cardinal State Bank, Nat'l Ass'n v. Crook*, 184 W.Va. 152, 399 S.E.2d 863 (1990), quoting Syl. Pt. 1, *Kanawha Banking and Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947). Judicial construction in that circumstance is simply not warranted. *See* Syl. Pt. 1, *Cabot Oil & Gas Corp. v. Pocahontas Land Corp.*, 180 W.Va. 200, 376 S.E.2d 94 (1988).

■ When, however, the terms of the written agreement are ambiguous, leaving doubt as to the object or extent of the parties' engagement, parol evidence may be admitted to permit appropriate interpretation of the agreement and "to explain uncertain, incomplete, or ambiguous contract terms." *Yoho v. Borg–Warner Chems.*, 185 W.Va. 265, 266, 406 S.E.2d 696, 697 (1991); *accord, Shafi v. St. Francis Hosp.*, 183 W.Va. 414, 396 S.E.2d 181 (1990); *Tri–State Asphalt Prods., Inc. v. McDonough Co.*, 182 W.Va. 757, 391 S.E.2d 907 (1990); *Glenmark Assocs., Inc. v. Americare of West Virginia, Inc.*, 179 W.Va. 632, 371 S.E.2d 353 (1988); *Buckhannon Sales Co. v. Appalantic Corp.*, 175 W.Va. 742, 338 S.E.2d 222 (1985). As we noted in *Buckhannon Sales,* upon a finding of ambiguity, extrinsic evidence would be permitted to explain " 'the situation of the parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently.' " *Id.* at 745, 338 S.E.2d at 224 (quoting Syl. Pt. 4, *Watson v. Buckhannon River Coal Co.*, 95 W.Va. 164, 120 S.E. 390 (1923)); *accord, John D. Stump & Assocs., Inc. v. Cunningham Memorial Park, Inc.*, 187 W.Va. 438, 419 S.E.2d 699 (1992); *Hays and Co. v. Ancro Oil & Gas, Inc.*, 186 W.Va. 153, 411 S.E.2d 478 (1991).

■ As we explained in syllabus point 2 of *International Nickel Co. v. Commonwealth Gas Corp.*, 152 W.Va. 296, 163 S.E.2d 677 (1968),

"Extrinsic evidence may be used to aid in the construction of a contract if the

matter in controversy is not clearly expressed in the contract, and in such case the intention of the parties is always important and the court may consider parol evidence in connection therewith with regard to conditions and objects relative to the matter involved...." Syl. Pt. 2, *Berkeley Co. Pub. Ser. Dist. v. Vitro Corp.,* [152] W.Va. [252], [162 S.E.2d 189] [ (1968) ].

*Accord, Bittorf v. Bittorf,* 182 W.Va. 594, 390 S.E.2d 793 (1989).

As noted above, the lower court relied upon an affidavit submitted by Mike Johnson of the DNR. Mr. Johnson's comments, as well as other evidence reviewed by the lower court and this Court, indicated that the Appellee submitted $191,366.00 in the grant amendment. Of this amount, $141,279.39 had previously been paid to Kelley, leaving a balance of $50,086.61. The $140,755.00 received by the Appellee from EPA/DNR represented approximately 74% of the $191,366.00 submitted. Thus, applying that 74% to the $50,086.61 balance owed to Kelley, Kelley's portion of the federal share would be 74%, $36,839.78, as awarded by the lower court.[6]

We concur with the reasoning employed by the lower court in determining that the language of the settlement agreement was ambiguous and that additional evidence was admissible to assist in the ascertainment of the meaning of the language of that agreement. Based upon the foregoing, we affirm the decision of the lower court.

Affirmed.

---

**6.** The following chart demonstrates the percentages paid to the Appellee by the EPA/DNR:

| Grant Eligible | Percentage Paid | | |
|---|---|---|---|
| $191,366.00 total | $140,755.00 total (74%) | $141,279.39 | previously paid $103,915.22 (74%) to Kelley |
| | | $ 50,086.61 | unpaid balance $ 36,839.78 (74%) paid to Kelley |