465 S.E.2d 266

**Dale E. RAINES, Plaintiff Below, Appellant,**

v.

**C.E. WHITE, G.F. White, Karen S. White and Paul E. White, Defendants/Third–Party Plaintiffs Below, Appellees,**

v.

**CHARLESTON LINCOLN–MERCURY, INC., Third–Party Defendant Below, Appellee.**

No. 22816.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 1995.

Decided Nov. 17, 1995.

Richard D. Owen, Goodwin & Goodwin, Charleston, J. Nicholas Barth, Barth, Thompson & George, Charleston, for Appellant.

Jeffrey M. Wakefield, Richard E. Jones, Flaherty, Sensabaugh & Bonasso, Charleston, for Appellees C.E. White, G.F. White, Karen S. White and Paul E. White.

Thomas E. Scarr, Thomas A. Heywood, Bowles Rice McDavid Graff & Love, Charleston, for Appellee Charleston Lincoln–Mercury, Inc.

**PER CURIAM:**

Dale E. Raines, the plaintiff below and appellant herein, appeals from an adverse summary judgment order entered by the Circuit Court of Kanawha County on October 6, 1994. The plaintiff claims the circuit court erred in finding C.E. White, G.F. White, Karen S. White, and Paul E. White (the Whites), the defendants/third-party plaintiffs below and appellees herein, had not breached a written agreement regarding supplemental rental payments. This agreement was made in conjunction with the sale of an automobile dealership known as Raines Lincoln–Mercury, which was owned by the plaintiff and controlled through two of his corporations, Raines Lincoln–Mercury, Inc., and Dale E. Raines Agency, Inc. In July of 1995, the Whites purchased the stock of these two corporations.

Neither of these corporations owned the real property on which the business was operated. The automobile dealership business was located on three parcels of land situated in Charleston, West Virginia. The first and most valuable parcel (first parcel) was owned by Raines Motors, Inc.[1] At the time of the purchase of the stock of the two corporations from the plaintiff, it was recognized by the Whites that the lease rental on the three parcels, which was $4,475 per month, was very advantageous. Consequently, the agreement at issue in this case was designed to provide additional compensation to the plaintiff by stating that he would receive as rent $10,000 per month for the three parcels less what actually was paid as rent on the three parcels by the Whites through the two corporations they purchased from the plaintiff.[2]

---

1. Raines Motors, Inc., is a corporation whose major shareholder is Lester Raines III, a relative of the plaintiff. The other two parcels are leased from Geary Realty Company and John L. Ray and are not directly involved in this litigation.

2. The relevant language of the agreement states:

"1. During the period December 1, 1986, through December 31, 2003, the parties of the first part [the Whites] will pay unto the party of the second part [Dale E. Raines] a monthly sum of money equal to the difference between Ten Thousand Dollars ($10,000.00) (monthly fair market value for rent) and all sums Raines Lincoln–Mercury, Inc. (or its successor) is required to pay and accrue monthly to its said three (3) Lessors under the terms of the three (3) aforesaid leases and all renewals thereof and rentals and rental equivalents the parties of the first part are required to pay for like substitutionary property if it is unable to continue renting any of the properties covered by the aforesaid three (3) leases, which rental sums for the month of August, 1985, total Four Thousand Four Hundred Seventy–Five Dollars ($4,475.00). No credit or deduction from said Ten Thousand Dollar ($10,000.00) monthly sum shall be given for any other payments (by way of illustration for taxes, insurance, fire fees, public assessments, maintenance, repairs and utilities) made by the Lessee pursuant to the terms of said leases."

The parties agree that the written agreement has continuing validity through the following events. In December of 1987, the Whites sold the assets of the automobile dealership to a corporation known as Charleston Lincoln–Mercury, Inc. Charleston Lincoln–Mercury, Inc., was assigned the three leases and assumed the Whites' obligation under the agreement. The major shareholder of Charleston Lincoln–Mercury, Inc., is Robert Thomas. Robert Thomas also owned another corporation called Bob Thomas Ford, Inc., which was incorporated in Indiana. In 1989, Bob Thomas Ford, Inc., purchased the first parcel from Raines Motors, Inc. Bob Thomas Ford, Inc., also obtained from Raines Motors, Inc., an assignment of its lessor's interest in the lease on the first parcel which Charleston Lincoln–Mercury, Inc., leased.

Thereafter, Bob Thomas Ford, Inc., as the owner and lessor of the first parcel, negotiated a higher rental with the lessee, Charleston Lincoln–Mercury, Inc. The rent on the first parcel was increased from $3,000 per month to $6,300 per month which continues to escalate until it reaches $9,300 per month by December 1, 2002. The effect of this increased rent was to diminish and then negate the compensating rent payment in the agreement with the plaintiff. This resulted in the lawsuit filed by the plaintiff. The circuit court found the agreement was clear and unambiguous and there was no illegal conduct by Charleston Lincoln–Mercury, Inc., and granted summary judgment in its favor. For the following reasons, we affirm the judgment of the circuit court.

 Our standard of review of a circuit court's grant of summary judgment is summarized in Syllabus Points 1 and 2 of *Jones v. Wesbanco Bank Parkersburg*, 194 W.Va. 381, 460 S.E.2d 627 (1995):

"1. 'A circuit court's entry of summary judgment is reviewed *de novo*.' Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

"2. ' " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).' Syl. pt. 2, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)."

 The parties rely on our traditional rules for construing contracts. In effect, each party indicates that the involved contract language is plain and unambiguous in support of their positions. In fact, after rather extensive discovery, each party moved the circuit court for summary judgment. The parties cite Syllabus Point 1 of *Cotiga Development Co. v. United Fuel Gas Co.*, 147 W.Va. 484, 128 S.E.2d 626 (1962):

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent."

*See also Fraley v. Family Dollar Stores of Marlinton, W.Va., Inc.*, 188 W.Va. 35, 422 S.E.2d 512 (1992); *Kanawha Valley Power Co. v. Justice*, 181 W.Va. 509, 383 S.E.2d 313 (1989); *Cabot Oil & Gas Corp. of W. Va. v. Pocahontas Land Corp.*, 180 W.Va. 200, 376 S.E.2d 94 (1988).

To support his position, the plaintiff points to several provisions in the agreement with respect to the supplemental rental payments. Specifically, the second "WHEREAS" clause identifies each of the three leases[3] and the third "WHEREAS" clause contains an ac-

---

**3.** This clause states:

"WHEREAS, Raines Lincoln–Mercury, Inc., owns three (3) leasehold estates, the first being that certain THIS AGREEMENT OF LEASE, dated January 1, 1984, between Raines Motors, Inc., a corporation, as Lessor, and Raines Lincoln–Mercury, Inc., a corporation, as Lessee, the second being that certain THIS LEASE, dated May 16, 1977, by and between Geary Realty Company, a corporation, as Lessor, and Raines Lincoln–Mercury, Inc., as Lessee, and the third being that certain THIS LEASE, dated August 16, 1976, between John L. Ray and others, as Lessor, and Raines Lincoln–Mercury, Inc., as Lessee[.]"

knowledgment by the parties that the rents under the leases are modest and below fair market value.[4] The plaintiff then points to paragraph 1 of the agreement where the Geary and Ray leases are identified as Lease Nos. 2 and 3 (second and third parcels) and are acknowledged to expire before December 31, 2003, the date of the expiration of the supplemental rental agreement.[5]

The plaintiff makes two arguments from these portions of the agreement. One argument is that the first parcel was not contemplated to be subject to rent increase and, therefore, not subject to the compensation formula. The second and somewhat interrelated argument is that the substitution language is meant to apply only to the leases on the second and third parcels.

We find these arguments are not supported by the language of paragraph 1 of the agreement. First, the initial portion of paragraph 1 contains clear language that it applies to all three leases as it refers to the rent required to be paid to "its said three (3) Lessors under the terms of the three (3) aforesaid leases[.]"[6] It is true that paragraph 1 does contain a direct reference to the fact that "Lease[ ] No[s]. 2 and 3 expire prior

to December 31, 2003"; however, this same sentence goes on to state "or if any of said leases are terminated prior to December 31, 2003," which obviously is a reference to all three leases.[7] It is manifest that while the renewal language applies only to leases on the second and third parcels, the termination of lease language and the subsequent substitution language applies to all three leases.

The plaintiff also contends that the language in paragraph 3 of the agreement obligates the Whites to make the supplemental rental payments even if they "acquir[e] the fee interest in said leasehold estates[.]"[8] However, the acquisition of the fee interest was not done by the Whites or their successor, Charleston Lincoln–Mercury, Inc. The plaintiff does not discuss the question of the assumption of the fee interest of first parcel by Bob Thomas Ford, Inc., as an independent act except to state it was a sham transaction.

The plaintiff also relies on paragraph 4 of the agreement which provides that the agreement is only for the benefit of the parties and that no other party can take advantage of the agreement.[9] We find the

4. This clause provides:
 "WHEREAS, the parties of the first part [the Whites] and the party of the second part [Dale E. Raines] have agreed between themselves that the rents reserved under the terms of said leases are modest and that each of said leasehold estates warrants a higher rental and the parties hereto have come to an agreement between themselves regarding the disparity between the rentals reserved under the aforesaid leases and what the fair market value of said leasehold estates is as of this date."

5. This portion of paragraph 1 provides:
 "However, a deduction or credit from said Ten Thousand Dollars ($10,000.00) monthly sum is to be made for any increases in rent under the terms of said leases or any leases given in renewal or substitution thereof. Further, as Lease[ ] No[s]. 2 and 3 expire prior to December 31, 2003, or if any of said leases are terminated prior to December 31, 2003, and if the Lessee has to buy or rent substitute facilities, then a credit upon or deduction from said Ten Thousand Dollar ($10,000.00) monthly sum shall be given for all rental for said substituted quarters to the extent said substituted quarters are equal or approximately equal to the quarters for which the lease could not be renewed or was terminated, as the case may be, and to the extent the substituted quarters

exceed the leasehold estate which could not be renewed or was terminated, as the case may be, no credit or deduction is to be given."

6. See note 2, *supra*, for the applicable language.

7. See note 5, *supra*, for this language.

8. The entire text of paragraph 3 is:
 "These payments as called for under this agreement are to continue on the terms set forth above and are not to be abated, voided or abrogated in any fashion by any event (other than those set forth in paragraphs 1 and 2, above), including without limiting the generality of the foregoing, the sale by the parties of the first part of Raines Lincoln–Mercury, Inc., or any successor thereto, the cessation of operating an automobile agency or any other business from any of said leasehold estates by the parties of the first part, the assignment or subletting of said leasehold estates by the parties of the first part, *acquiring the fee interest in said leasehold estates by the parties of the first part,* or the death of any or all of the parties of the first part." (Emphasis added).

9. Paragraph 4 of the agreement states:
 "This agreement is binding on the parties hereto and their respective successors or as-

paragraph in internally inconsistent in that it begins by recognizing that the agreement is binding on the parties and their successors or assigns, but it then concludes that the "agreement is for the benefit of the parties hereto and no other person, firm or corporation[.]" This paragraph contains no new restrictions regarding the acquisition of fee ownership of the leasehold estate. Thus, we conclude paragraph 4 does not apply to the fee ownership by a third party as the third party may negotiate a new rental agreement affecting the supplemental rental payments due to the plaintiff.

■ The difficulty with the agreement is that there is no express language which prohibits the transaction that occurred in this case where a third party acquired the fee ownership and negotiated an increase in the rent.[10] We find that the acquisition of the fee by Bob Thomas Ford, Inc., and its renegotiation of the lease with Charleston Lincoln–Mercury, Inc., was not a prohibited transaction under the agreement. To cover this situation, paragraph 3 should have provided that if the fee is acquired by the party of the first part, a successor or assign, or *any party which the party of the first part has an interest,* the party of the first part may not reduce the supplemental rental payment from the amount originally contemplated at the time this agreement was formed between the party of the first part and the party of the second part.

■ What the plaintiff would have us do is alter the agreement and read this language into the agreement. We decline to make this alteration as it would be contrary to our customary rule contained in Syllabus Point 2 of *Bennett v. Dove,* 166 W.Va. 772, 277 S.E.2d 617 (1981):

" 'It is not the right or province of a court to alter, pervert or destroy the clear

signs as set forth and limited herein. The obligations of the parties of the first part are joint and several. This agreement is for the benefit of the parties hereto and no other person, firm or corporation nor can any other person, firm or corporation take advantage of the provisions hereof, insist on the enforcement of any provisions hereof, obtain a copy of this agreement, or otherwise."

meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.' *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W.Va. 484, 128 S.E.2d 626 (1962), Syllabus Point 3."

Finally, the plaintiff argues that the acquisition of the fee by Bob Thomas Ford, Inc., was a "sham." This argument is based on the fact that Robert Thomas is the majority shareholder of Charleston Lincoln–Mercury, Inc., and the sole owner of Bob Thomas Ford, Inc. The plaintiff does not seek to pierce the corporate veil under the principles contained in *Laya v. Erin Homes, Inc.,* 177 W.Va. 343, 352 S.E.2d 93 (1986). Rather, the claim is made that the Thomas corporations have achieved a result they could not achieve directly, i.e., merging the leasehold with the fee. However, as earlier explained, the agreement contained a prohibition against the Whites and their successor foregoing supplemental rental payments by purchasing the fee but it does not prohibit a third-party purchaser of the fee from renegotiating the rent, thereby, reducing or negating the supplemental rent to be paid to the plaintiff. We are cited no authority for the sham theory except a reference to *Dayton–Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319 (10th Cir.1987), which involves a lessee's attempt to bypass a percentage rental under its ground lease.

The fact that the plaintiff may have suffered a loss because the agreement did not cover the transaction does not mean the transaction may be set aside. In *Mills v. USA Mobile Communications, Inc.,* 190 W.Va. 209, 438 S.E.2d 1 (1993), we recognized that a corporate entity may be disregarded under some circumstances. However, we declined to pierce the corporate veil

10. The defendants assert that Charleston Lincoln–Mercury, Inc., is an entirely separate corporation from Bob Thomas Ford, Inc., with separate shareholders, even though Robert Thomas is the majority shareholder. Both corporations maintain separate books, records, and financial accounts. It also is asserted that Bob Thomas Ford, Inc., placed a number of improvements on the property upon its acquisition which justified increasing the rent.

on the basis that the plaintiff gave up a good job to manage a newly formed corporation at an initial salary of $55,000 under an employment contract which elevated his salary to $100,000 after one year. Within the year, he was fired. He then brought suit against the corporation and its shareholders. The circuit court granted summary judgment in favor of the shareholders. We affirmed the summary judgment stating: "There may have been inflated promises made, but we do not find these promises formed the basis for imposing stockholder liability on the verdict against the corporation." 190 W.Va. at 213, 438 S.E.2d at 5.

A somewhat analogous situation is *111 Properties, Inc. v. Lassiter*, 605 So.2d 123 (Fla.App.1992), where the vendor sought to set aside the corporation's purchase of real property on the basis that its sole shareholder used the corporation as a subterfuge to obtain the property because the shareholder knew that the vendor would never sell the property to him. The court found these facts to be insufficient to pierce the corporate veil concluding: "Although it may have been clever, it is not an example of the kind of conduct ... sufficient to pierce a corporate veil." 605 So.2d at 126. (Citation omitted).

Thus, we conclude that due to the absence of any specific language in the agreement prohibiting a reduction in the amount of supplemental rent to be paid as a result of a third party purchasing the fee interest in the leasehold property and increasing the rent due to the third party, the plaintiff has no basis for seeking relief. We, therefore, affirm the judgment of the Circuit Court of Kanawha County.

Affirmed.

MILLER, Retired Justice, sitting by temporary assignment.

ALBRIGHT, J., did not participate.