Louis J. DEL GIORNO, Plaintiff,

v.

GATEWAY REGIONAL, HEALTH SYSTEMS, INC., Gateway Health Enterprises, Inc., Gateway Foundation, Inc., Inwood Family Medicine, Peter L. Mulford, both individually and in his capacity as President of Gateway Foundation, Inc., John Palkot, M.D., and Other Unknown and Unnamed Defendants, Defendants.

Civil Action No. 3:97–CV–59.

United States District Court,
N.D. West Virginia,
Martinsburg.

Sept. 21, 1999.

## MEMORANDUM OPINION
## AND ORDER

BROADWATER, District Judge.

On this day, the above styled matter came before the Court for consideration of the defendant's motion for summary judgment (Document No. 49). After reviewing the memoranda of law and considering oral argument presented by the parties, the Court finds that the motion should be granted.

### I. FACTS

On May 6, 1999, Dr. Louis J. Del Giorno ("plaintiff") entered into a contract for sale of medical practice ("Contract") with Dr. Frank A. Hamilton and Dr. John S. Palkot ("Palkot"). The Contract consisted of seven pages and a one page addendum agreement. This medical practice was located at 630 Winchester Avenue, Martinsburg, Berkeley County, West Virginia.

Subsequent to the contract of sale, Palkot remained with the practice as an employee. The plaintiff alleges that the other defendants intentionally enticed Palkot to abandon his relationship with the plaintiff. Further, the result of the enticement was Palkot becoming an employee of the defendants.

On July 15, 1997, the plaintiff brought this action naming as defendants the following: Gateway Regional Health Systems, Inc.; Gateway Health Enterprises, Inc.; Gateway Foundation, Inc.; Inwood Family Medicine; Peter Mullford, both individually and in his capacity as President of Gateway Foundation, Inc.; and other unknown and unnamed defendants. The complaint alleged tortious interference of the contract for sale of the medical practice. On November 12, 1997, the plaintiff amended his complaint to add Palkot as a defendant. Also, the plaintiff added a breach of contract claim to his complaint.[1] Plaintiff claims that Palkot's employment with the other named defendants violated various terms and conditions of the Contract.

### II. SUMMARY JUDGMENT STANDARD

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, as the United States Supreme Court noted in *Anderson v. Liberty Lobby, Inc.,* Rule 56 itself "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that can be properly resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. *See also Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979) (holding that "summary judgment 'should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'") (citing *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950)).

In *Celotex,* the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a show-

---

1. The complaint was amended one further time. The bankruptcy trustee was added as a plaintiff. However, the trustee subsequently abandoned all claims in this case.

ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *Oksanen v. Page Memorial Hosp.*, 912 F.2d 73, 78 (4th Cir.1990), *superseded on rehearing*, 945 F.2d 696 (4th Cir.1991). Additionally, "[o]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citation omitted).

### III. DISCUSSION OF LAW

■ The Court will first address the breach of contract claim. As a general rule, when "a writing appears to be a complete contract, embracing all of the particulars necessary to make a perfect arrangement and designed to express the whole arrangement between the parties, it is conclusively presumed to embrace the entire contract and all the terms and provisions of the agreement." *Wood County Airport Authority v. Crown Airways, Inc.*, 919 F.Supp. 960, 965 (S.D.W.V.1996)(citing *Kelley, Gidley, Blair, & Wolfe, Inc. v. City of Parkersburg*, 190 W.Va. 406, 438 S.E.2d 586, 589 (1993)). Also,

> [e]xtrinsic evidence of statements and declarations of the parties to an unambiguous written contract occurring contemporaneously with or prior to its execution is inadmissible to contradict, add to, detract from, vary or explain the terms of such contract, in the absence of a showing of illegality, fraud, duress, mistake or insufficiency of consideration.

Syllabus Point 1, *Kanawha Banking and Trust Co. v. Gilbert*, 131 W.Va. 88, 46 S.E.2d 225 (1947).

The Contract in this case is not ambiguous with respect to Palkot's responsibilities. Furthermore, Section 6 of the contract provides that the "... contract and any exhibits thereto completely lists all contractual obligations of Buyer and Sellers relating to the sale of subject medical practice." Therefore, a plain reading of the document points to the outcome of this case.

■ The plaintiff alleges that Palkot breached the contract in numerous ways. The foremost allegation of breach was that Palkot failed to retire from the practice of medicine after termination of his employment with the plaintiff. However, the plaintiff fails to cite a covenant not to compete in the Contract.[2]

■ A reading of the contract reveals no limitation of Palkot's career in medicine beyond limitations while employed by the plaintiff. Section 3(b) of the Contract states that "[i]f after the date of this contract, Dr. Palkot continues to practice medicine at the subject medical practice ..." This section sets forth monetary terms of the sale. Further, section 3(b) states that "Buyer and Dr. Palkot expressly agree to these terms, additionally, after three and one-half (3½)years from the date of this contract it is understood that Dr. Palkot will completely retire from practicing medicine at the subject practice." Thus, the Contract does not require Palkot to cease practicing medicine altogether. It only applies to the subject medical practice.

■ Plaintiff also alleges that Palkot's actions ran afoul of Section 8 of the Contract. Section 8 states in its entirety: "COOPERATION OF SELLERS. Sellers agree to fully cooperate with Buyer in announcing Buyer's continuation of Seller's

---

**2.** A restrictive covenant or covenant not to compete, if inherently reasonable, is presumptively enforceable in its entirety. To be inherently reasonable, the time or area limitations must not be excessively broad and the covenant must not be designed to intimidate employees rather to protect the employer's business. See *Reddy v. Community Health Foundation of Man, et al*, 171 W.Va. 368, 298 S.E.2d 906 (1982).

medical practice to Sellers' former and current patients and the general public."

After the execution of the Contract in 1993, Palkot worked as an employee of the plaintiff. On or about July 15, 1995, Palkot left the employ of the plaintiff to be a physician at Inwood Family Medicine. This medical practice was allegedly in direct competition with the plaintiff's practice. The plaintiff alleges that Palkot actively solicited his former patients. Palkot also advertised publicly that he was practicing medicine at Inwood Family Medicine. Also, Palkot allegedly posted notices of his new employment at the plaintiff's practice.

Palkot's actions did not constitute a breach of the contract. Section 8 of the Contract required cooperation in announcing the continuation of plaintiff's practice. Palkot worked for the plaintiff for a period of time greater than two years after the contract went into effect. It is undisputed that while an employee, Palkot promoted the continuation of the plaintiff's medical practice. However, the plaintiff contends that the language of the contract should prevent Palkot from moving on in his career. A plain reading of the instrument proves otherwise. The contract is devoid of any clause which would prevent Palkot from continuing the practice of medicine and encouraging patients to continue under his care.

In sum, viewing the facts in a light most favorable to the plaintiff, there exists no genuine issue of material fact as to the plaintiff's breach of contract claim. Likewise, the Court finds that summary judgment should be granted in favor of the defendant on the breach of contract claim.

■ The Court next addresses the plaintiff's tortious interference claim. In order to establish a prima facie tortious interference claim, the plaintiff must show: (1) existence of a contractual or business relationship or expectancy; (2) an intentional act of interference by a party outside that relationship or expectancy; (3) proof that the interference caused the harm sustained; and (4) damages.

Syllabus Point 5 of *Torbett v. Wheeling Dollar Savings and Trust Company,* 173 W.Va. 210, 314 S.E.2d 166 (1983).

■ Section 3(b) of the contract states in pertinent part:

> To Dr. Palkot, Seller, the Buyer agrees to pay FORTY–FIVE THOUSAND DOLLARS ($45,000.00) over the next six (6) years conditioned upon and subject to the following modifications. If after the date of this contract, Dr. Palkot continues to practice medicine at the subject medical practice, it is agreed for every year after the date of this contract which Dr. Palkot continues to practice medicine, the Buyer's debt to him for the purchase price shall be reduced TEN THOUSAND DOLLARS ($10,-000.00) ... Buyer and Dr. Palkot expressly agree to these terms, additionally, after three and one-half (3½) years from the date of this contract it is understood that Dr. Palkot will completely retire from practicing medicine at the subject practice. If Dr. Palkot wishes to continue to practice at the subject medical practice, he must give buyer written notice three (3) months prior to the expiration of the 3½ years of his desire to continue to practice, whereupon, Buyer has the option to agree to allow Dr. Palkot to continue to practice under terms then agreed upon by both Buyer and Dr. Palkot or Buyer may refuse to allow the continuation of practice by Dr. Palkot, in the event Buyer refuses to allow the continuation of practice by Dr. Palkot, Buyer must give written notice of the refusal at least forty-five (45) days prior to the expiration of the 3½ years. If Dr. Palkot fails to give timely written notice of his desire to continue to practicing [sic], the Buyer assumes that Dr. Palkot will be retiring from the medical practice three and one-half (3½) years after the date of this contract.

A reading of the Contract language reveals that Palkot was under no obligation to remain at the plaintiff's medical practice. The Contract provided only adjust-

**608**

ment to the purchase price "if" Palkot wished to work as an employee of the plaintiff. Therefore, there was no contractual obligation on the part of Palkot to work for the plaintiff. Therefore, the plaintiff has failed to meet the first requirement of establishing a prima facie tortious interference claim.

Viewing the facts in a light most favorable to the plaintiff, the Court concludes that there exists no genuine issue of material fact as to the plaintiff's tortious interference claim. Furthermore, the Court finds that summary judgment should be granted in favor of all defendants on the tortious interference claim.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that there exists no genuine issue of material fact concerning plaintiff's allegations and that judgment as a matter of law should be granted in favor of all defendants.

It is, therefore, **ORDERED:**

1. That the defendants' motion for summary judgment (Document No. 41) be **GRANTED;**

2. That all other motions pending before the Court be **DENIED** as being moot;

3. That this case be **DISMISSED AND STRICKEN** from the active docket of the Court.

4. That the plaintiff, acting as his own counsel, *pro se*, is hereby notified that any notice of appeal must be filed with the Court Clerk within thirty (30)days after entry of this Order.